A89A0257. REECE v. THE STATE.
(383 SE2d 572)

Birdsong, Judge.

Appellant Charles Reece was convicted of rape, statutory rape, and child molestation, all in connection with a twelve-year-old girl who had lived in his home as a foster child.

The appellant enumerates many errors below, but we find it sufficient to rule upon only one, and reverse the conviction on account of it. *Held*:

The determinative issue centers around OCGA § 24-2-3, Georgia's "rape shield law." It was shown that the victim experienced a vaginal infection observed by the physician as a yellow-greenish, frothy discharge with a foul odor. The State elicited this testimony from the doctor, as well as the fact that the victim told the doctor "that [it] was present after the time of vaginal penetration, and then it had persisted until the time that I saw her." There was other evidence that the victim said she had not had sexual intercourse with anyone else, and evidence that sexual intercourse transmits the disease.

The defendant strenuously objected to this testimony, reminding the court that it had in limine instructed defendant he "could not absolutely, and surely to goodness . . . interject anything about this girl having a vaginal infection." He insisted that the evidence introduced by the State implied and suggested defendant had given the victim a venereal or vaginal disease. He argued that the door had been opened for him to "put a name" to the disease (trichomoniasis) and to show that it is usually sexually transmitted; that if the defendant had had sexual intercourse with the victim he would have transmitted the disease to her (and, presumably, if she already had it she would have transmitted it to him); and, significantly, that the defendant did not have and had not had such a disease, which would be proved by the medical records of his wife, who had at that very time been undergoing medical and gynecological treatment and testing for pregnancy and who herself was proven to have no such disease.

The prosecutor responded that whatever the doctor had said, "[t]here was absolutely no mention of a vaginal disease of any nature. . . . This jury has not been led to believe that there was any

vaginal disease or infection of any kind." The discussion became subjective, but the trial court itself said to the prosecutor, "what you are doing by putting [it] in there, you are trying to infer it was given to her by the Defendant . . . [w]hich sort of affects my sensibilities to some extent."

The case of *Brown v. State*, 173 Ga. App. 640 (327 SE2d 515) was discussed; in that case the defendant contended it was error to disallow his cross-examination of the 12-year-old victim "as to other sexual activity to support his defense that her vaginal infection was caused by someone other than himself." The trial court here aptly indicated that the situation in this case was the opposite: the State had elicited and introduced evidence that the child developed a vaginal infection after the "forcible entry" by the defendant, thus implying the defendant gave her the disease; but still the trial court believed OCGA § 24-2-3 prevented the defendant from this line of questioning. The trial court inferred from *Brown*'s disallowance of defense *cross-examination* about vaginal disease, that the State had interjected the matter, and therefore, according to *Brown*, this fact did not open the door to cross-examination in violation of § 24-2-3. Defendant's attorney urged: *"Brown* doesn't say the State can lead a jury to believe that a Defendant has given a victim a venereal disease and then [*the defendant*] not even be allowed to mention it."

The trial court ruled, finally, that the defendant could, because of the crack in the door opened by the State, ask "only three questions . . . number one, the name—put a name on this disease—and two, the most probable method of transmitting it, and number three, do you have to have medication to clear it up?" Defense counsel begged to ask a fourth question, viz., if defendant and his wife were having sexual intercourse during the time in question "and her medical records show she did not have trichomoniasis. . . ." The trial court would not let him pursue this course.

This was error. The facts in *Brown* are very different from the facts in this case, so it does not necessarily control here. The trial court in this case discerned that, despite previous adjuration, the State had "calculatedly" injected the fact of the victim's vaginal or venereal infection.

Although the State earnestly denied any attempt by this to imply the defendant transmitted a venereal disease to the victim, ergo, that he therefore committed the crimes charged, we are in agreement with the trial court and the defense that there can have been no other object. In fact, the way the doctor's testimony was stated directly implies defendant gave her the disease: "She told me that [the yellow-greenish, frothy discharge with a foul odor] was present after the time of vaginal penetration, and then it had persisted until the time that I saw her." Particularly since the doctor testified the victim maintained

she had not had sexual intercourse with anyone else, the testimony just quoted virtually compels the jury to reach but one conclusion: that the defendant had sexual intercourse with her. He should have been allowed, in a proper fashion, to show by his wife's medical records, or otherwise, that his wife was then undergoing medical treatment and tests for pregnancy and showed no sign of this disease, and therefore, by logical extension, that the defendant did not have the disease.

We do not see how allowing this vital defense to be put forward offends the rape shield law, OCGA § 24-2-3, in any way at all. Perhaps it might suggest by deduction that if defendant did not have the disease, and did not transmit it to the victim, then someone else might have done so. This is not an improper attempt to explore the victim's past or other sexual experience; and if under some remote consideration it suggests that (in addition to perhaps bathing in water which another infected person had enjoyed) the victim had some sexual activity with someone else, so be it. That is speculation only. Any possible harm caused to the victim by such speculation is far outweighed by the harm done to the defendant in denying him the opportunity to prove he did not have the disease. Such speculation should not stand in the way of allowing defendant to present this vital defense to the prejudicial testimony elicited by the State. The conviction must be reversed on this basis, and we need explore no other.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED MAY 23, 1989 —
REHEARING DENIED JUNE 21, 1989.

*Douglas W. McDonald Law Offices, P. Gerald Cody, Jr.,* for appellant.

*Michael H. Crawford, District Attorney, E. Jay McCollum, Assistant District Attorney,* for appellee.