## 46967. THE STATE v. AGAN et al.
### (384 SE2d 863)

Hunt, Justice.

We granted certiorari to the Court of Appeals in *Agan v. State*, 191 Ga. App. 92 (380 SE2d 757) (1989) to review that opinion, with emphasis upon "[t]he correct interpretation of the offering of a bribe, as prohibited by OCGA § 16-10-2 (a) (1), and the acceptance of a 'campaign contribution,' as defined in OCGA § 21-5-3 (6)."

The facts, more fully set forth in the Court of Appeals opinion, are summarized as follows. Agan, the Honorary Turkish Consul in Atlanta, sought a building height variance for the construction of a hotel on his property. Agan and Sarper, an Emory University professor, had discussed with officials of the Emory Medical Clinic a plan to bring Turkish patients to the Clinic who would stay at the hotel. The DeKalb County Commission twice had rejected Agan's application for a variance. Agan submitted a third application, and spoke with two DeKalb County commissioners, Lanier and Fletcher, inquiring what Agan could do to insure the approval of his application. Agan told Fletcher he had a number of friends in the local Turkish-American Association who wished to contribute to Fletcher's campaign. At a meeting between Agan and Fletcher, Agan urged Fletcher to support the variance application, then left Fletcher with four checks totaling $3,700, made to Fletcher personally, and marked "for campaign contribution," despite Fletcher's protests that he did not even have a campaign bank account. The checks were drawn on the accounts of Sarper and three others who testified they were reimbursed for the checks by Agan and believed Agan wanted contributions to come from different people in order to give the impression he enjoyed broad support in the Turkish community. After another meeting between Agan and Fletcher in which Agan reiterated his need for the variance, Agan presented Fletcher with a fifth check for $800 marked as a campaign contribution, from a third party. Agan, accompanied by Sarper, also met with Lanier to discuss the variance. As they left Lanier's office, Sarper gave Agan an envelope at Agan's request and, back in Lanier's office, without Sarper, Agan presented Lanier with the envelope containing Sarper's check to Lanier for $3,000 marked "campaign contribution," despite Lanier's statement to him that he was not up for re-election for three years. The Court of Appeals, on appeal from Sarper and Agan's convictions for bribery, ordered a new trial for Agan, and vacated Sarper's conviction for insufficient evidence.

## Sufficiency of the Evidence

1. (a) The Court of Appeals correctly determined under the standard established by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), that a rational trier of fact could have found the essential elements of the crime of bribery to have been established beyond a reasonable doubt in regard to Agan. There was ample evidence at trial that Agan gave payments to Lanier and Fletcher for the specific purpose of influencing their votes on his application for a building height variance, thus committing the crime of bribery. See Division 2(a) below.

(b) We decline to review the Court of Appeals' holding that the evidence against Sarper was insufficient to support the verdict of guilty. See our Rule 30 (1).

## The Charge

2. (a) The state contends the Court of Appeals erred in holding the trial court's charge constituted reversible error. The trial court charged the jury on the definition of the offense of bribery as set forth in OCGA § 16-10-2 (a) (1), which provides that:

> "[a] person commits the offense of bribery when. . .[h]e gives or offers to give to any person acting for or on behalf of the state or any political subdivision thereof . . . any benefit, reward, or consideration to which he is not entitled with the purpose of influencing him in the performance of any act related to the functions of his office."

The trial judge then stated to the jury that "the word 'entitled' does not have any specific or extraordinary or particular legal terminology or definition. I will charge you the word 'entitle' means to give a deed or title to." Regarding the Ethics in Government Act, OCGA § 21-5-1 et seq., the court charged:

> A campaign contribution means a gift, an advance or deposit of money or anything of value, conveyed or transferred for the purposes of influencing the nomination for election or election of any person for office. . . . [A] campaign contribution, as I have just defined for you, can be made directly to the candidate . . . [U]nder Georgia Law campaign contributions can be made for use in future campaigns for elective office . . .: [I]t is not the use to which the money may be put, but it is the purpose for which the money was paid that controls.

(b) The Court of Appeals found the trial court's charge faulty for failing to read the bribery statute, OCGA § 16-10-2, in conjunction with the Ethics in Government Act, OCGA § 21-5-1 et seq., which defines political contributions and sets forth the manner in which they may be received and reported. In particular, the Court of Appeals held the language of the bribery statute prohibiting the giving or offering to a public officer of a benefit to which that officer *"is not entitled,"* is to be read very narrowly to proscribe the giving or offering to a public official of a benefit to which that officer *"is not qualified or privileged to receive or has no grounds or right to seek, request, or receive."* 191 Ga. App. at p. 97. (Emphasis supplied.) The Court of Appeals further held:

> [A] campaign contribution, whether made to a candidate in the heat of a campaign or to encourage or influence the official after he is elected, is something which a candidate or elected official is qualified or privileged to request or receive and thus is something to which he is "entitled" within the meaning of OCGA § 16-10-2. 191 Ga. App. at p. 98.

We interpret this holding as meaning, in effect, that if money given to an office holder qualifies as a campaign contribution, requiring reporting under the Ethics in Government Act, OCGA § 21-5-1 et seq., then it cannot be a bribe. With this conclusion we respectfully disagree.

The Ethics in Government Act has in no manner altered the bribery statute. The Act simply defines a campaign contribution[1] and,

---

[1] The term "contribution" is defined in OCGA § 21-5-3 (6) as follows:

"Contribution" means a gift, subscription, membership, loan, forgiveness of debt, advance or deposit of money or anything of value conveyed or transferred for the purpose of influencing the nomination for election or election of any person for office, bringing about the recall of a public officer holding elective office or opposing the recall of a public officer holding elective office, or the influencing of voter approval or rejection of a proposed constitutional amendment, a state-wide referendum, or a proposed question which is to appear on the ballot in any county or municipal election. The term specifically shall not include the value of personal services performed by persons who serve without compensation from any sources and on a voluntary basis. The term "contribution" shall include other forms of payment made to candidates for office or who hold office when such fees and compensation made can be reasonably construed as a campaign contribution designed to encourage or influence a candidate or public officer holding elective office.

Although portions of the foregoing language might be read to authorize bribery of a candidate for public office, we decline to interpret the statute to reach such an absurd result. An explanation for the somewhat inartful language of the statute may be found in its legislative history. The predecessor statute to the Ethics in Government Act (the Financial Disclosure Act, Ga. L. 1974, p. 155 et seq.) defined "contribution" as follows:

" 'Contribution' means a gift, subscription, loan, forgiveness of debt, advance or deposit of money or anything of value conveyed or transferred for the purpose of influ-

having defined, requires disclosure. Specifically, nothing in the Act permits a public office holder to request or receive anything of value "to which he is not entitled with the purpose of influencing him in the performance of any act related to the functions of his office or employment. . . ." (OCGA § 16-10-2 (a).) Nor is the term "entitled," as contained in the bribery statute, modified in any way by the Ethics in Government Act. Other than those emoluments of public office that are expressly authorized and established by law, *no* holder of public office is entitled to request or receive — from any source, directly or indirectly — anything of value in exchange for the performance of any act related to the functions of that office.[2]

As noted above, the Court of Appeals found the trial court's definition of the term "entitled" misleading because it failed to inform the jury that a public official is entitled to receive campaign contributions. Although we reverse this holding, we note the trial court's charge on the meaning of "entitled" (see Division 2(a) above) was somewhat inapt. However, because the more appropriate meaning of "entitled" is more restrictive than the definition given by the trial court, we view any error as helpful to the accused, and harmless.

### Constitutionality of the Bribery Statute
### Vagueness Challenge

3. We find no merit to Agan's contention that OCGA § 16-10-2

---

encing the nomination for election or election of any person for the offices provided for in section 2." [Ga. L. 1974, p. 155.]

The following year, the act was amended to provide:

" 'Contribution' means a gift, subscription, loan, forgiveness of debt, advance or deposit of money or anything of value conveyed or transferred for the purpose of influencing the nomination for election or election of any person for the offices provided for in section 2, but the term specifically shall not include the value of personal services performed by persons who serve without compensation from any source and on a voluntary basis. 'Contribution' shall include retained fees, fees or any other form of payment made to candidates for office or who hold office when such fees and compensation made can be reasonably construed as a campaign contribution designed to encourage or influence the candidate or office holder to introduce legislation which enriches the person, company, corporation or other entity which made the contribution. Introduction of such enriching legislation by the candidate subsequent to his election to office shall be prima facie evidence that the fee, compensation or retainer fee was a campaign contribution under the meaning of this Act." Ga. L. 1975, pp. 1122-23.

The Ethics in Government Act carried forward the substance of this definition, but removed the words that restricted the term "influence" to influencing the introduction of enriching legislation. We view this not as an attempt to restrict the definition of a *bribe*, but as a manner of enlarging the definition of a *contribution* so as to insure the reporting of most all transfers to the candidate or office holder.

[2] Our holding means that a transfer that is a bribe as defined by OCGA § 16-10-2 also may come within the definition of "contribution" as contained in the third sentence of OCGA § 21-5-3 (6). The fact that such a transfer must be reported does not change its character as a bribe.

(a) is unconstitutionally vague, hence void. A similar contention was rejected in *King v. State*, 246 Ga. 386, 387-388 (271 SE2d 630) (1980), as follows:

> Bribery is a well-known word, used widely and understood generally. Its ordinary signification may mean an " 'act of influencing the action of another by corrupt inducement.' [Cit.]"

## First Amendment Challenge

4. Agan contends the bribery statute must be interpreted as condemning only a payment to a public officer who agrees to a clearly delineated *quid quo pro*, i.e., an explicit purchase of an explicit official act. Were that not so, he insists, the bribery statute would be an impermissible restraint upon free speech under the First Amendment to the Constitution of the United States. He relies principally upon *Buckley v. Valeo*, 424 U. S. 1 (96 SC 612, 46 LE2d 659) (1976).

In *Buckley*, the Supreme Court examined the application of the First Amendment to limitations upon campaign expenditures by a candidate for public office, and limitations upon amounts that might be contributed to a campaign, finding a violation of the right of free speech for the former, and none for the latter. The holdings in *Buckley* do not apply to the bribery statute, which places no limitation upon *amounts* of contributions or expenditures, but, rather, restricts the *purposes* for which any "benefit, reward or consideration" may be offered or given to, or solicited or accepted by, a public officer. Even assuming the First Amendment might relate to the purposes of political transfers, it cannot be understood to shield the bribing of a public officer.[3]

---

[3] "Where the letter of the statute results in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the spirit or reason of the statute." *Sirmans v. Sirmans*, 222 Ga. 202, 204 (149 SE2d 101) (1966). That logic should apply alike to all legal authorities, including the Constitution.

We decline to follow the "rule," as urged by Agan, of *People v. Brandstetter*, 103 Ill.App.3d 259 (430 NE2d 731) (1982), that: "[P]ublic officials are 'authorized by law' to receive campaign contributions from those who might seek to influence the candidate's performance as long as no promise for or performance of a specific official act is given in exchange." Id. at 736. In that case, a political activist was convicted of bribery for handing to a state legislator a note that read: "Mr. _____, the offer for help in your election & $1000 for your campaign for Pro ERA vote."

While Brandstetter's conviction was affirmed on appeal, we are concerned that its "rule" would proliferate corrupt practices. As example, note this story in *The Atlanta Journal and Constitution* of July 8, 1989:

> "A millionaire who handed out $10,000 checks on the [Texas] Senate floor while legislation that interested him was pending said the checks were political contributions, not an attempt to bribe lawmakers. 'It would be difficult to make it into a bribery case,' said [the district attorney], who believes it's time to change Texas's

Citizens of Georgia have every right to try to influence their public officers — through petition and protest, promises of political support and threats of political reprisal. They do *not* have, nor have they ever had, the "right" to buy the official act of a public officer. OCGA § 16-10-2 (a). Public officers are not prohibited from receiving legitimate financial aid in support of nomination or election to public office. They do *not* have, nor have they ever had, the "right" to sell the powers of their offices.[4] OCGA § 16-10-2 (b). The bribery statute does not serve to weaken free speech. It serves to strengthen free government.

## The Display of Currency

5. We need not determine the propriety of the admission into evidence of currency obtained through the cashing of checks and the district attorney's display of that currency. The error, if any, was not so harmful as to require reversal under the standard of *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

## Selective Prosecution

6. The state contends error in the Court of Appeals' holding that the trial court applied an incorrect standard in denying Agan and Sarper an evidentiary hearing on their selective prosecution defense. The majority held the defendants would be entitled to a hearing on their showing of "colorable entitlement" to that defense. 191 Ga. App. at 99 (5).

In support of their pre-trial motion to dismiss for selective prosecution, Agan and Sarper claimed they could not be prosecuted for

---

loose campaign finance laws. 'In Texas, it's almost impossible to bribe a public official as long as you report it. . . .' "

[4] The acceptance of a bribe is an egregious conflict of interest, and will vitiate official acts that otherwise appear to be lawful. "When neighbors of rezoned property challenge the rezoning in court on its merits, it will be set aside only if fraud or corruption is shown or the rezoning power is being manifestly abused to the oppression of the neighbors." *Cross v. Hall County*, 238 Ga. 709, 711 (235 SE2d 379) (1977). For recent cases on conflicts of interest, see *Dunaway v. City of Marietta*, 251 Ga. 727 (308 SE2d 823) (1983); *Wyman v. Popham*, 252 Ga. 247 (312 SE2d 795) (1984); *Brooks v. Dept. of Transp.*, 254 Ga. 303 (4) (328 SE2d 705) (1985); and *Vickers v. Coffee County*, 255 Ga. 659 (340 SE2d 585) (1986). See also *Olley Valley Estates v. Fussell*, 232 Ga. 779, 784-785 (208 SE2d 801) (1974):

[W]here self-interested voting has been alleged, the usual rule of only limited review of zoning decisions is abrogated, and judicial inquiry into all the pertinent surrounding circumstances is proper, and this is true whether or not the question of the commissioner's possible bias was raised at the zoning hearing.

Criminal sanctions attached to bribery inhere in the prosecutorial authority of the district attorney. Civil sanctions, as exemplified by the cases cited in this note, lie to an aggrieved citizen, that is, to one who has suffered "substantial damage to a substantial interest." *Brand v. Wilson*, 252 Ga. 416, 417 (314 SE2d 192) (1984).

paying money to county commissioners for the purpose of influencing their vote on a pending land use application because the district attorney had not prosecuted others who have made similar payments. Their offer of proof consisted of: the names of all persons who made money transfers to the two commissioners during the years 1982 through 1987; the names of all such donors who had interests in matters pending before the county commission at the times that the money transfers were made; and, derived from a comparison of those two lists, a list of money transfers that were made to the two commissioners contemporaneously with the pendency before the county commission of applications that had been filed on behalf of such donors. The number of such transfers was 252.[5]

The Court of Appeals held, contrary to the trial court's holding,[6] that the proffer was sufficient to entitle Agan and Sarper to an evidentiary hearing.[7] We agree. We have stated the rule as to selective prosecution in the following terms:

> The party seeking to prove unconstitutionally discriminatory enforcement of the law under Yick Wo [v. Hopkins, 118 U. S. 356 (6 SC 1064, 30 LEd 220) (1886)] has the burden of presenting sufficient evidence to establish the existence of intentional or purposeful discrimination which is deliberately based upon an unjustifiable standard, such as race, religion, or other arbitrary classifications.

*State v. Causey*, 246 Ga. 735, 737 (273 SE2d 6) (1980).[8] The proffer here included details of money transfers that were similar to those for which Agan and Sarper were prosecuted, and identified sources of reliable and available evidence, i.e., permanent public records, and

---

[5] The indications from the proffer are that, for the years 1982, 1986, and 1987, one of the two commissioners reported 221 transfers of funds from donors having matters pending before the county commission at the times of such transfers. The total thus transferred was $164,900. The other commissioner, in 1984, received from similar donors 31 transfers that totalled $11,950.

[6] The trial court's written order recited:
Merely showing that other zoning applicants have made campaign contributions would not be sufficient in the court's opinion to sustain a claim of selective prosecution. The defendants must show that other persons are in the same or similar circumstances and have not been prosecuted. Defendants have made no showing that the state has information similar to the information on these defendants where the state failed to prosecute. For this reason, defendants' motion to dismiss for selective prosecution is denied.
This statement of legal principles is essentially correct. We disagree, however, with the trial court's assessment of the proffer.

[7] 191 Ga. App. at pp. 99-100.

[8] This standard was reiterated in *Sabel v. State*, 250 Ga. 640, 643 (300 SE2d 663) (1983) and in *Dept. of Natural Resources v. Union Timber Corp.*, 258 Ga. 873, 876 (375 SE2d 856) (1989).

names of witnesses who are disinterested in this prosecution. Because the proffer demonstrated a reasonable likelihood that Agan and Sarper might be able to prevail in their contention of selective prosecution under the rule in *Causey*, they should have been given the opportunity to submit their proofs.[9] Although this issue is now moot as to Sarper (see Division 1 (b), supra) Agan is entitled to a hearing on his claim of selective prosecution.

We point out, however, that a proffer strong enough to merit an evidentiary hearing does not, of necessity, equate to proof of selective prosecution. Under the rule of *Causey*, the fact that only one person is prosecuted for doing what many others do is no warrant, in itself, for relief.[10] Agan has the burden of proving by the weight of the evidence that his prosecution represents an "intentional or purposeful discrimination which is deliberately based upon an unjustifiable standard, such as race, religion, or other arbitrary classification."[11] This he must establish, if he can, by proving the averments of the proffer relative to other money transfers,[12] and by showing, through the testimony of the district attorney or otherwise, the extent of any other investigations or prosecutions of donors who are situated similarly.[13] If, notwithstanding the disclosure to the district attorney of the proffer materials, it should appear that he has conducted little or no investigation into apparently similar offenses, or has initiated no prosecutions of any such offenses, only then would it be incumbent upon the district attorney to demonstrate that the prosecution of Agan is something other than selective prosecution.

Depending upon the evidence, the trial judge as trier of fact might find that similar offenses have gone uninvestigated or unprosecuted; that the district attorney knew or should have known of such

---

[9] On their face, the allegations of Agan and Sarber appear to have more substance than those which were advanced in *Sabel*, supra, and *Causey*, supra.

[10] "Some selective enforcement is not in itself a constitutional violation." *Sabel*, supra at p. 643. The sole fact that only one actor is prosecuted cannot be "selective prosecution," as it then would be impossible to initiate the first prosecution under a new criminal statute, or to begin a "crack-down" on unlawful behavior that had gone unchecked in the past.

[11] *Causey*, supra at p. 737.

[12] The proffer purports to be a list of contributions made to the two commissioners involved with this prosecution. It would be relevant to the issue of "arbitrary classification" to consider a compilation of all financial transfers (within reasonable time limits) that have been made to all voting commissioners during the pendency before the county commission of matters in which the donors had financial interests.

[13] Agan and Sarper sought to cross-examine the district attorney at the hearing held on their motion. The trial court refused their request, observing:

And before I am going to require the district attorney to get on the stand and let you start cross-examining him about how he makes decisions to prosecute cases, a prima facie case and reasonable cause to believe that there is some selective prosecution [must be shown]. I don't think you have shown me enough.

Our comment at note 6, above, applies as well to this ruling.

offenses; and that failure to act is without a reasonable and responsible explanation.[14] Based on such a finding, the trier of fact might conclude that the circumstances support an inference of the existence of "intentional or purposeful discrimination" based upon an "unjustifiable standard" of an "arbitrary classification" — that is, an arbitrary classification whereby *only* Agan continues to be prosecuted, and all the rest go free. Such a conclusion would equate to selective prosecution.

Accordingly, and notwithstanding the reinstatement of Agan's conviction for want of reversible error during the trial, the case is remanded to the trial court with direction that an evidentiary hearing be accorded to Agan on his proffer. If he should succeed in establishing that his prosecution is "selective prosecution" under the principles we have outlined, his conviction must be vacated. Failing that, his conviction will stand.

7. We have reviewed the remaining contentions on appeal and find no error.

*Judgment affirmed in part, reversed in part, and remanded. All the Justices concur.*

DECIDED OCTOBER 26, 1989 —
RECONSIDERATION DENIED NOVEMBER 9, 1989.

*Robert E. Wilson, District Attorney, R. Stephen Roberts, Barbara B. Conroy, Assistant District Attorneys,* for appellant.

*Jake Arbes, Bobby Lee Cook, P. Bruce Kirwan, George E. Butler II,* for appellees.

*Michael J. Bowers, Attorney General, Leonora Grant,* amicus curiae.

---

[14] The passage of time may be important here. Agan and Sarper were indicted and arrested in July 1987. The motion as to selective prosecution was filed in September 1987. Hearing was held in November 1987, and the court denied the motion in January 1988. The trial took place in that same month, and a motion for new trial was denied in February 1988. The Court of Appeals opinion was handed down in March 1989.