S90A0569. ROWLAND v. TATTNALL COUNTY et al.
(390 SE2d 217)

WELTNER, Justice.

1. After serving as chief deputy clerk of superior and state courts of this state for over fourteen years, Rowland sought election to the position of chief magistrate judge. She paid the advertised qualifying fee of $474, and was elected.

(a) At the time she sought office, the chief magistrate was paid an annual salary of $13,400.[1] The salary was a matter of public record.

(b) After her election, Rowland served as clerk as well. The annual supplement for that position was established at $2,400.[2]

---

[1] OCGA § 15-10-23 provides a minimum salary for chief magistrates of $10,300 for counties with this population, unless otherwise provided for by local law. The statute provides further that the county may supplement the minimum annual salary "as it may fix from time to time."

[2] OCGA § 15-10-105 (d) provides:
If there is no clerk of magistrate court, the chief magistrate or some other magistrate appointed by the chief magistrate shall perform the duties of clerk. A chief magistrate performing the duties of clerk, or another magistrate appointed by the chief magistrate to perform the duties of clerk, shall receive in addition to any other com-

(c) OCGA § 21-2-131 (a) (1) provides that "[the qualifying fee of public offices] shall be 3 percent of the annual salary of the office if a salaried office."

2. After Rowland assumed office, she demanded an annual salary of $15,800 as chief magistrate, in addition to the clerical supplement, based upon her calculation that the advertised qualifying fee amounted to three percent of this.

(a) The county clerk conceded that she had computed the qualifying fee incorrectly, based upon the salary *and* the clerical supplement.[3]

(b) The county tendered to Rowland a refund of the difference between the qualifying fee that she paid and the fee that she should have paid based upon the salary for chief magistrate of $13,400. She rejected the tender.

3. Rowland filed a declaratory judgment action to compel the county to pay her the higher judicial salary, based upon the erroneously computed qualifying fee.

(a) Her complaint alleged:

that she should be paid the annual salary upon which the qualifying fee was based, $15,800.00, and upon which she relied in seeking the office in question and that the defendants be estopped from denying her entitlement to the salary.

(b) In Rowland's deposition, the following colloquy appears:

Q. Prior to qualifying as a candidate for Chief Magistrate, did you ever inquire of any of the Commissioners as to the exact amount of the salary of the Chief Magistrate?
A. No, sir.
Q. Prior to qualifying did you ever inquire of [the county clerk] as to the exact amount of the salary of the Magistrate?
A. No, sir.
Q. Did you inquire of anybody in the Commissioner's Office . . . as to the exact —
A. No, sir.
Q. Did you ever ask to see the records concerning the salary

---

pensation to which he is entitled compensation for performing the duties of clerk, the amount of which compensation shall be fixed by the county governing authority at not less than $200.00 per month.
[3] In an opinion, the Attorney General stated:
for the purpose of computing a qualifying fee, only the salary which the law provides for the office directly involved should be included and not the additional compensation paid for the ex-officio position held by the incumbent. [1970 Op. Atty. Gen. No. 70-53.]

paid to the Chief Magistrate?

A. No, sir, 'cause I, you know, figured what was run in the paper was accurate.

4. The trial court granted summary judgment to the county, stating:

Because the advertisement for those seeking the position of Chief Magistrate was erroneous does not change the statutory provisions which must be obeyed by the governing authority when collecting and disbursing public funds. Furthermore, applicants for an elected position, as are other citizens, are presumed to know the law which, at all times relevant to these proceedings, was a matter of statute and public record as to what the salary of Chief Magistrate was, and is, for Tattnall County. Likewise, the compensation for a clerk is also specified.

5. The following tenets must govern the disposition of this appeal:

(a) Art. I, Sec. II, Par. I of the Constitution of Georgia of 1983 provides that "Public officers are the trustees and servants of the people and are at all times amenable to them."

(b) In *State v. Agan*, 259 Ga. 541, 544 (384 SE2d 863) (1989), we held:

Other than those emoluments of public office that are expressly authorized and established by law, *no* holder of public office is entitled to request or receive — from any source, directly or indirectly — anything of value in exchange for the performance of any act related to the functions of that office.

The judgment of the trial court was correct, in both reason and result. *Judgment affirmed. All the Justices concur.*

DECIDED APRIL 19, 1990.

*Cheney & Cheney, Curtis V. Cheney, Jr.,* for appellant.
*Joseph D. McGovern,* for appellees.