### A96A2114. GRIFFIN v. THE STATE.
(480 SE2d 608)

BEASLEY, Judge.

Griffin appeals his convictions of rape (OCGA § 16-6-1), battery (OCGA § 16-5-23), and false imprisonment (OCGA § 16-5-41).

At the time of the commission of the crimes, Griffin and the victim were married, but they were going through a divorce that became final approximately seven months later. The parties' minor daughter, who was not yet two, was visiting Griffin.

The victim testified as follows. Griffin called her that afternoon, told her he had to go out of town, and asked her to come to his residence for the child. Although he was not supposed to be there, he appeared when the victim arrived. He said the child was in the bedroom asleep. When the victim went to the bedroom, she found a pillow placed under the bed cover and attempted to leave, but he prevented her from doing so.

When she refused his request that she disrobe, he produced a gun, shot it in the air, and beat her with it. After hitting her in the mouth and breaking two front teeth, he held the gun to her head and threatened to kill her. He choked her and dragged her to the bed, where he forcibly performed oral sodomy and rape. He agreed to take her to the hospital afterward, but she jumped out of the car as they were leaving because she feared that he would cause additional harm. She ran to a neighbor's house and called 911.

Medical testimony and photographs taken at the emergency room showed bruises, scratches, and cuts all over the victim's body, including her vaginal area, and broken teeth.

Griffin testified that on the day in question, the victim appeared at his residence to retrieve some items. According to him, they argued about issues in the divorce proceeding but then made up and had consensual sexual intercourse. Afterward, she said she thought she was pregnant, to which he responded, "Whose is it?" As a result, they argued. She then sought a physical confrontation, and he told her "to get her bastard child that she was carrying out of my house." She went into a rage, slapped him, and scratched his face. A fight ensued, during which he hit her, and she fell on her face.

1. Griffin first contends that the court erred in holding that he could not cross-examine the victim regarding legal disputes that occurred after the date of the rape. He argues that these disputes may have affected the victim's motives, biases, and interests in testifying.

During defense counsel's cross-examination of the victim, he sought to question her concerning Griffin's then-present relationship with the parties' child. The court sustained the State's objection and instructed counsel that "we're not going to try the divorce case." Outside the jury's presence, defense counsel argued that the disputes in the parties' divorce action were relevant to establish the victim's motive in prosecuting. The court ruled that counsel could show those disputes which occurred prior to the alleged rape but not subsequent to it.

Counsel argued that the latter, specifically a motion to revoke Griffin's bond because of his violation of a restraining order and a contempt petition for nonpayment of child support, established that her past motive continued into the present and affected her credibil-

ity. In order to place some limits on the scope of Griffin's inquiry into matters relating to the divorce, the court ruled that disputes such as the bond revocation hearing and contempt citation regarding child support could not be admitted.

Griffin was not prohibited from presenting evidence and cross-examining the victim concerning the contested issues in the divorce proceeding such as child custody. The court did not abuse its discretion in ruling that the two disputes arising after the date of the alleged crimes were of such marginal relevance to her credibility that Griffin's extensive cross-examination of the victim should not extend to their collateral subjects. The jury was already well aware of the discord between the estranged couple, whose divorce was final by the time of trial. "[T]he right to cross-examine is not absolute and . . . a trial court may impose reasonable limits to take account of such factors as ' " . . . interrogation that (would be) repetitive or only marginally relevant(.)" [Cit.]' [Cit.]" *Gibbs v. State*, 196 Ga. App. 140, 142 (3) (395 SE2d 387) (1990); compare *Boggs v. State*, 195 Ga. App. 605 (394 SE2d 401) (1990). " 'The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.' " (Citation omitted.) *Hines v. State*, 249 Ga. 257, 260 (2) (290 SE2d 911) (1982).

2. Griffin next contends that the court erred in applying the Rape Shield Statute to prohibit him from cross-examining the victim regarding her relationship with the chief assistant district attorney. Griffin argues that this relationship may have affected her motives, biases, and interests in testifying.

At a pretrial hearing, romantic involvement between the victim and the chief assistant district attorney, the prosecuting attorney in this case, came to light. As a result, the district attorney recused himself and his assistants, and the Attorney General was appointed to represent the State.

The new prosecuting attorney made an oral motion in limine to prohibit the defense from introducing matters concerning any sexual conduct between the victim and other men, including the recused prosecuting attorney. After extensive discussion, the court ruled that the victim could be questioned as to what was said by her and the appellant at the time of the alleged rape, but that under the Rape Shield Statute evidence as to her sexual behavior with other men would not be admitted unless she opened the door to such evidence. See *Reece v. State*, 192 Ga. App. 14 (383 SE2d 572) (1989).

"The Georgia Rape Shield Statute, OCGA § 24-2-3, prohibits the admission of evidence relating to the past sexual behavior of the complaining witness, except where that behavior directly involved the participation of the accused and the evidence at issue supports an inference that the accused could have reasonably believed that the

witness consented to the conduct complained of in the prosecution." *Green v. State*, 221 Ga. App. 436 (472 SE2d 1) (1996). "The Rape Shield Statute limits inquiries or suggestive innuendoes concerning the sexual background of the rape victim absent compliance with its terms. It represents 'the exclusive means for admitting evidence relating to the past sexual behavior of the complaining witness. . . .' [Cits.]" *Gibbs*, supra at 141 (1).

The evidence the defense sought to introduce did relate to other sexual behavior of the complaining witness. Compare *Smith v. State*, 259 Ga. 135, 136 (1) (377 SE2d 158) (1989); *George v. State*, 257 Ga. 176 (1) (356 SE2d 882) (1987); *Villafranco v. State*, 252 Ga. 188, 193-195 (1), (2) (313 SE2d 469) (1984); *Lemacks v. State*, 207 Ga. App. 160 (427 SE2d 536) (1993); *Raines v. State*, 191 Ga. App. 743, 745 (2) (382 SE2d 738) (1989). See 81 ALR4th 1076, 1081, § 4 (inadmissibility of sexual conduct after offense). That behavior did not directly involve the participation of the accused, and it did not support an inference that he could have reasonably believed that the complaining witness consented to the conduct at issue. Consequently, under the Rape Shield Statute, evidence of such behavior was inadmissible. See *Green*, supra (holding that under the Rape Shield Statute the defendant could not question the 13-year-old victim concerning her possible pregnancy as a result of consensual sexual activity with other men, in order to establish a motive for her making a false allegation that she had been raped). Evidence concerning a romantic relationship between the victim and the recused prosecuting attorney would not have contributed materially to the guilt or innocence of the accused as to the incident at issue but rather would have injected irrelevant and prejudicial matter. *Green*, supra; *Lemacks*, supra.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 10, 1997 — ▋

▋

*Hollberg, Weaver & Kytle, George M. Weaver, Hugh W. Rowling, Jr.*, for appellant.

*Michael J. Bowers, Attorney General, Terry L. Lloyd, Assistant Attorney General*, for appellee.