A02A0563. BING v. THE STATE.
(567 SE2d 731)

ANDREWS, Presiding Judge.

Antavian Demond Bing, convicted of aggravated assault with intent to commit rape, aggravated child molestation, and child molestation, appeals, contending that the trial court erred in granting the State's motion in limine regarding the victim's having had consensual sex with her boyfriend before the acts committed by Bing. Finding no error, we affirm.

1. Viewed in favor of the jury's verdict, the evidence was that T. M., then 15 years old, snuck out of her family home at 3:00 a.m. on July 12, 2000, to meet her boyfriend, Suresh May, and his friend, Kenny Johnson. The three drove around for a while and then went to Johnson's house. May eventually left, and T. M. and Johnson were alone for an hour or two, during which they fell asleep. Upon awakening, T. M. realized she needed a ride back to her home. Johnson told T. M. that Bing, who lived a few houses away, would give her a

ride. They went to Bing's house, and he invited them into his entertainment room where the three played video games. Then all three went into a bedroom. Johnson, who was late for work, told Bing and T. M. that he needed to hurry. Johnson and Bing then left T. M. in the bedroom and consulted outside. Johnson then told T. M. that Bing would take her home.

When Johnson left the room to use the telephone, Bing committed the acts charged in the indictment. During those acts, he placed a stun gun to T. M.'s neck. Johnson returned to the bedroom and pulled Bing off T. M. When asked what happened, T. M. was too upset to answer. She still needed a ride home, but Johnson could not take her. T. M. then allowed Bing to take her home, sitting in the backseat while he took her to her cousin's house, the first house on her block. Her cousin told T. M. her family had been looking for her all morning. T. M., upset and crying, told her cousin what happened, and police were summoned. A medical examination of T. M. and the resulting laboratory tests revealed no physical evidence of the charges. Although T. M. could not tell the police Bing's address, she pointed the house out to them and described the interior to them. Officers obtained a search warrant and were in the process of knocking Bing's door in with a sledgehammer to execute the warrant, after repeatedly knocking loudly, when Bing finally opened the door. The officers discovered a stun gun belonging to Bing in the bedroom.

Bing denied that either T. M. or Johnson had been in his home. Bing later gave a statement to officers at the police station in which he again denied that T. M. and Johnson had been in his house. He denied any sexual contact with T. M. and contended that her knowledge of an unusual mark on his penis must have come when he scratched in her presence and he and Johnson discussed his rash or Johnson told her about it. In a third statement, Bing again denied T. M.'s and Johnson's presence in his home. Finally, on advice of his attorney, Bing acknowledged that the two had been in his home that day, but still denied any sexual contact with the victim.

The evidence was legally sufficient to support the jury's verdict under the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Price v. State*, 252 Ga. App. 273, 274 (1) (556 SE2d 168) (2001).

2. Relying on *Villafranco v. State*, 252 Ga. 188, 193 (1) (313 SE2d 469) (1984), and *Williams v. State*, 180 Ga. App. 562, 563 (349 SE2d 797) (1986), Bing contends that he should have been allowed to introduce as part of the res gestae the fact that, prior to T. M.'s coming to his house with Johnson, she had consensual sex with her boyfriend, May.

The Rape Shield Statute bars the admission of evidence relating to the victim's past sexual behavior unless it directly involves the accused's participation and supports an inference that the accused could have reasonably believed that the victim consented to the conduct at issue. *Griffin v. State*, 224 Ga. App. 225, 227-228 (2) (480 SE2d 608) (1997); OCGA § 24-2-3 (b). The evidence may also be admitted on a finding that it "is so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented to the conduct complained of and that justice mandates the admission of such evidence." OCGA § 24-2-3 (c) (2); *Brown v. State*, 214 Ga. App. 676, 677 (2) (448 SE2d 723) (1994). We review the trial court's exclusion of the evidence for abuse of discretion. *Hicks v. State*, 222 Ga. App. 828, 829 (1) (476 SE2d 101) (1996).

*Davis v. State*, 235 Ga. App. 362, 363 (1) (509 SE2d 655) (1998).

Since Bing denied having any sexual contact with T. M. and there was no evidence that, prior to the charged acts, he had any knowledge of T. M.'s sexual activities, the trial court correctly concluded that the Rape Shield Statute barred her prior sexual history as having any relevance to Bing's intent at the time. *Davis v. State*, supra (prior sexual activity with the defendant not admissible); *Bates v. State*, 216 Ga. App. 597 (454 SE2d 811) (1995) (prior sexual activity with boyfriend not admissible).

*Williams*, supra, involved statements made to a nurse over several hours by two 13-year-old victims who had been kidnapped, held for eight days, and repeatedly raped and sodomized by Williams. The trial court properly found these statements met the statutory requirements of res gestae so as to be free "from all suspicion of device or afterthought." *Williams*, supra at 563.

*Villafranco*, supra, involved a victim's statement, prior to encountering Villafranco, that she wanted to go to the party "to get some nookey." There, the statement was held admissible to show her existing motive and state of mind. In that case, there was a dispute regarding whether, prior to the charged acts, the victim had acted amorously *toward Villafranco*. If so, that would be one of the situations where a trial court could find the evidence met one of the exceptions to the Rape Shield Statute.

Neither case is similar to Bing's, and *Green v. State*, 221 Ga. App. 436, 437 (472 SE2d 1) (1996), is controlling. In *Green*, as here, the trial court rejected the theory that the victim's past sexual activity with her boyfriend was relevant. Green argued that such evidence would show she might have made false accusations of rape because

she was afraid she was pregnant by her boyfriend. That evidence did not go to show the victim's state of mind at the time of the rape, *Villafranco*, supra, was not otherwise admissible, and such bootstrapping would allow defendants to circumvent the Rape Shield Statute, which is not allowed. *Green*, supra.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 24, 2002.

*Robert J. Storms*, for appellant.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Assistant District Attorney*, for appellee.