## A03A2462. MOONEY v. THE STATE.
### (597 SE2d 589)

PHIPPS, Judge.

Ron Mooney was indicted on three counts of aggravated child molestation for placing his penis in the mouth of a child under the age of sixteen, for placing his mouth on the child's genitals, and for allowing an adult (the child's mother) to place her mouth on his penis in the presence of the child. The indictment further charged Mooney with two counts of child molestation for placing his penis in the child's vagina and for placing his hands on the child's vagina and one count of enticing a minor for indecent purposes by taking the child to a particular location (residence of Debra Watson) for the purpose of child molestation. Following a jury trial, Mooney was convicted on all counts. On appeal, he challenges the trial court's denial of his motion to dismiss the indictment based on his claim of selective and discriminatory prosecution, and he challenges various evidentiary rulings. Because the record demonstrates no reversible error, we affirm.

At trial, the state presented the testimony of the victim, who stated that on several occasions during the summer of 1999, when she was 14 years old, Mooney took her and her mother to the residence of Debra Watson. There, Mooney gave her crack cocaine and she performed oral sex on him. The victim testified that one day during her 2000 spring break, she called Mooney, asking him to pick her up. Mooney picked her up and took her to a motel room, where they used crack cocaine; she performed oral sex on him; he touched her breast and her vagina with his hands and with his mouth; and he inserted his penis into her vagina. She testified that, the next day, she contacted Mooney again. Mooney picked her up and took her to

---

[26] *Standard v. Hobbs,* 263 Ga. App. 873, 880 (3) (589 SE2d 634) (2003).

another motel room, where she used drugs; he placed his hands on her breasts and genital area; he performed oral sex on her; she performed oral sex on him; and he inserted his penis in her vagina.

The state also presented the testimony of the victim's mother, who stated that she had introduced her daughter to Mooney, who was, at that time, the mother's boyfriend. The mother admitted that, on several occasions, she allowed her daughter to go with her and Mooney to Watson's residence, where she and her daughter had engaged in oral sex with Mooney in exchange for drugs. The state presented the testimony of Watson, who recalled that during the summer of 1999, she saw first the victim and then the victim's mother perform oral sex on Mooney, and then each smoke crack cocaine. Also, the state presented as similar transaction evidence a videotape that showed Mooney telling women that he would give them drugs for sex and the women performing oral sex on Mooney.

Mooney took the stand and denied committing each count of the indictment. He recalled that during the pertinent time period, parties were held at Watson's residence: "perhaps a dozen people who were mostly drug addicts and mostly party-type people, who would get together on a regular basis and someone would provide stuff to smoke and . . . it was party central." He stated that he had seen the victim with her mother at Watson's residence and that he had seen the victim smoking crack. He testified that, although he sometimes had provided drugs for the parties, he had not given drugs to the victim. Mooney stated that what was shown by the videotape was similar to what had been happening at Watson's house. He testified that the videotape depicted no minors and that the recording had been made "for the pride and the pleasure of the people on [it]." Mooney denied ever seeing the victim at a motel.

1. Mooney contends that the trial court erred by denying his motion to dismiss the indictment on the basis of selective prosecution by the state. A defendant has the burden of proving, by the weight of the evidence, that his prosecution represents an "intentional or purposeful discrimination which is deliberately based upon an un-justifiable standard, such as race, religion, or other arbitrary classi-fication."[1] A showing that others were not prosecuted for doing what the defendant allegedly did is not, in itself, sufficient to establish selective prosecution.[2] A defendant must further show, through the testimony of the district attorney or otherwise, the extent of other investigations or prosecutions of those who allegedly committed

---

[1] (Punctuation and footnote omitted.) *State v. Agan*, 259 Ga. 541, 548 (6) (384 SE2d 863) (1989).

[2] Id.

similar offenses.[3] If it appears that, despite knowledge of apparently similar offenses, the district attorney conducted little or no investigation into those offenses or initiated no prosecutions of any such offenses, the district attorney must then demonstrate that the defendant's prosecution is something other than selective prosecution.[4] The trial judge as trier of fact might find that similar offenses have gone uninvestigated or unprosecuted, that the district attorney knew or should have known of such offenses, and that failure to act was without a reasonable and responsible explanation.[5]

> Based on such a finding, the trier of fact might conclude that the circumstances support an inference of the existence of "intentional or purposeful discrimination" based upon an "unjustifiable standard" of an "arbitrary classification." . . . Such a conclusion would equate to selective prosecution.[6]

(a) Citing gender as the arbitrary classification, Mooney points out that the victim had not been prosecuted for engaging in pandering and drug-related activities. As Mooney also has not been prosecuted for participating in those activities, we find no error in the trial court's denial of his motion on this ground.

(b) Apparently citing race as the arbitrary classification, Mooney asserts that a black male had had sex with the victim in his presence, but had not been prosecuted. At the evidentiary hearing on Mooney's motion to dismiss the indictment, the prosecutor explained that no black man had been prosecuted for sexual crimes against the victim because the state had not yet ascertained any such man's identity. The prosecutor stated, "[a]ny time Mr. Mooney wants to tell me who else was in the room having sex with [the victim] we would be happy to pursue that, but so far she doesn't know who that person is and therefore I don't have the ability to prosecute that person and so far [the victim] has not disclosed to us any other partners." We find no error in the trial court's denial of Mooney's motion asserting selective prosecution because of the state's failure to prosecute an unknown and unidentified black man.

(c) We also find no error in the trial court's denial of Mooney's motion as to his allegation that he was selectively prosecuted because the victim's boyfriend had had sex with the victim, but was not prosecuted. As to that allegation, Mooney has cited no arbitrary classification.

---

[3] Id.
[4] Id.
[5] Id. at 548-549.
[6] Id. at 549.

2. Mooney contends that the trial court erred by allowing the state to present the videotape as similar transaction evidence. He argues that the state failed to establish a proper purpose for the evidence. The trial court ruled that the videotape was admissible because it demonstrated Mooney's "proclivity to invite or bring females to a location to engage in sexual activity with [him] in exchange for crack cocaine" and "[his] intent, motive, bent of mind, course of conduct and lustful disposition during the occasions described by the alleged victim. . . ."

In *Simpson v. State*,[7] the Supreme Court of Georgia "put forth a clear and cogent rule" concerning the admission of sexually explicit material:

> In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.[8]

The videotape did not simply show that Mooney had a general interest in sexual activity. It showed Mooney engaged in oral sex, and it showed him offering drugs to women in exchange for oral sex, as he had offered drugs to the victim. Thus, the videotape showed Mooney's lustful disposition toward a particular sexual activity and his bent of mind to engage in that activity. The link between the videotape and the crimes charged in this case was Mooney's course of conduct — exchanging drugs for oral sex.

Although Mooney points out that he was not charged with engaging in drug offenses, pandering, or solicitation, prior independent acts need not have resulted in charges.[9] What is required in this regard is that the state show that the accused committed the independent act.[10] And the state met that requirement.

Mooney also points out that the videotape depicted no minors. But that dissimilarity did not render the videotape inadmissible. "[A]

---

[7] 271 Ga. 772 (523 SE2d 320) (1999).

[8] Id. at 774 (1).

[9] See generally *Howard v. State*, 220 Ga. App. 267, 269 (2) (469 SE2d 396) (1996), rev'd on other grounds, *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999); *Williams v. State*, 178 Ga. App. 581, 589-590 (8) (344 SE2d 247) (1986).

[10] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences."[11] "The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case."[12] The pertinent issue in this case is whether Mooney did or did not commit the charged sexual acts against the victim, and the videotape, which depicted Mooney's course of conduct in procuring sexual activity, is relevant to that issue as it corroborates the state's other evidence on that issue.

The trial court did not abuse its discretion in admitting the videotape.[13]

3. Mooney contends that the trial court erred in permitting the state to use the videotape as evidence against him because the evidence had been turned over to the state without his consent.

The videotape shown to the jury comprised redacted portions of two videotapes. The record shows that Mooney brought those two videotapes to the home of an ex-girlfriend during the time he lived with her, from October 1999 to the following March. When he moved out of her residence, he left behind some of his personal belongings, including the videotapes. While the ex-girlfriend kept most of Mooney's items for him, she gave the videotapes to her son because "I wanted those out of my house." By the time Mooney asked her for his videotapes, her son had turned them over to a county detective. Mooney argues that, because the ex-girlfriend had not obtained his permission to allow her son access to the videotapes, the state's receipt and use of them as evidence was illegal. After a hearing on this issue, the trial court found no merit in Mooney's argument, determining that the state had not improperly seized the videotapes by receiving them from the ex-girlfriend's son. Contrary to Mooney's contention, the trial court's ruling was not error.[14]

4. Asserting two arguments, Mooney contends that the trial court erred in ruling that OCGA § 24-2-3, commonly known as the Rape Shield Statute, barred evidence that the victim was "having sex with

---

[11] (Citations omitted.) *Lamb v. State*, 273 Ga. 729, 731 (1) (546 SE2d 465) (2001).

[12] (Citation and punctuation omitted.) *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998).

[13] See *Simpson*, supra; *Summage v. State*, 248 Ga. App. 559, 562 (2) (546 SE2d 910) (2001); compare *McDonald v. State*, 249 Ga. App. 1, 2-3 (548 SE2d 361) (2001) (evidence presented to show defendant's lustful disposition and was not linked to the crime charged); *Frazier v. State*, 241 Ga. App. 125, 126 (1) (524 SE2d 768) (1999).

[14] See generally *Walker v. State*, 228 Ga. App. 509, 510 (1) (493 SE2d 193) (1997); *Green v. State*, 127 Ga. App. 713, 714 (194 SE2d 678) (1972).

other men at the same time, in the same room [as] when she claimed to have had sex with [him]." This court reviews a trial court's exclusion of evidence under the Rape Shield Statute for abuse of discretion.[15]

First, Mooney argues that, because the Rape Shield Statute prohibits "evidence relating to the *past* sexual behavior of the complaining witness,"[16] the court erred in applying the statute to evidence relating to the victim's sexual activities occurring "when she claimed to have had sex with [him]." That argument fails because it has already been determined that the phrase " 'past sexual behavior' includes evidence of any sexual behavior by the victim before trial."[17]

Second, Mooney argues that the rape shield statute should not exclude evidence of those sexual activities because they were "part of the res gestae." That argument also fails because "[t]he Rape Shield Statute, OCGA § 24-2-3, supersedes all evidentiary exceptions, including the res gestae rule."[18]

The trial court did not abuse its discretion in ruling that the Rape Shield Statute barred the evidence.

5. Mooney contends that the trial court erred in ruling that the Rape Shield Statute barred a statement that the victim made to an investigator during a July 10, 2000 interview in Forsyth County. In response to questions concerning her past sexual relations, the victim stated, "I've only been with [my boyfriend]," who was not Mooney. Mooney asserts that the victim's prior statement was inconsistent with her trial testimony accusing him of sexual misconduct against her during 1999 and in the spring of 2000 because, by logical extension, her prior statement eliminates the possibility that he committed sexual crimes against her as alleged in the indictment, between January 1, 1999, and July 1, 2000. Mooney claims that he should have been permitted to cross-examine the victim on that statement.

(a) Mooney claims that the trial court erred by excluding the evidence without first having held a hearing, pursuant to OCGA § 24-2-3 (c). That claim is not supported by the record, which reveals that the court did hold a hearing on whether the statement was admissible.

(b) Mooney argues that the trial court erred in determining that the Rape Shield Statute barred the statement.

The Rape Shield Statute prohibits "evidence relating to the past

---

[15] *Jackson v. State*, 254 Ga. App. 562, 565 (2) (562 SE2d 847) (2002).

[16] (Emphasis supplied.) OCGA § 24-2-3 (a).

[17] (Footnote omitted.) *Williams v. State*, 263 Ga. App. 597, 599 (1) (588 SE2d 790) (2003).

[18] (Citations and punctuation omitted.) *Phillips v. State*, 196 Ga. App. 267, 268 (3) (396 SE2d 57) (1990).

sexual behavior of the complaining witness."[19] It seeks to protect the complaining witness by excluding evidence that might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused.[20] It assists the truth-seeking process by preventing the jury from becoming inflamed or impassioned and deciding the case on irrelevant and prejudicial evidence.[21]

The Rape Shield Statute expressly provides for an exception where consent is at issue,[22] and this court has further allowed admission of evidence reflecting on the victim's sexual behavior where such evidence rebutted some aspect of the State's case.[23] For example, in *Reece v. State*,[24] the defendant was on trial for rape, statutory rape, and child molestation. This court acknowledged that, by deduction, the defendant's proffered rebuttal evidence might suggest that the victim had had sexual activity with someone other than him.[25] Notwithstanding, the court determined that the defendant's presentation of the evidence was "not an improper attempt to explore the victim's past or other sexual experience" and that any harm caused to the victim by such suggestion was "far outweighed" by the harm done to the defendant in denying him the opportunity to present his defense to the prejudicial testimony.[26]

In *White v. State*,[27] the victim testified that the defendant had raped her and that two weeks afterward, she was suffering from a venereal disease. The victim further stated that after the rape, she was examined by a physician and was not then diagnosed with any vaginal infection. The defendant defended himself by testifying that he decided not to have intercourse with her because, among other things, she had a " 'discharge.' "[28] To impeach her testimony and to support his, the defendant sought to show that within hours of the alleged rape, she was diagnosed with several vaginal infections. As the defendant's proffered evidence suggested that the victim had been sexually active with someone else, the trial court ruled that it was barred by the Rape Shield Statute. This court reversed that ruling, determining that the excluded evidence was

---

[19] OCGA § 24-2-3 (a).

[20] *Williams*, supra, 263 Ga. App. at 598-599.

[21] Id. at 599.

[22] OCGA § 24-2-3 (b).

[23] See generally *Williams*, supra, 263 Ga. App. at 599 (1); *Rocha v. State*, 248 Ga. App. 53, 56 (2) (545 SE2d 173) (2001).

[24] 192 Ga. App. 14 (383 SE2d 572) (1989).

[25] Id. at 16.

[26] Id.

[27] 201 Ga. App. 53 (410 SE2d 441) (1991).

[28] Id.

not evidence of the victim's past sexual behavior in violation of Georgia's Rape Shield Statute. [Cit.] On the contrary, the excluded testimony was relevant to defendant's claim that he did not penetrate the victim because of the victim's gross physical condition. The testimony was also admissible to impeach the victim's claim that she was not diagnosed with vaginal infections after the alleged rape and it was admissible to challenge the victim's claim that defendant was the cause of her vaginal infections.[29]

In the instant case, the question of consent was not in issue. Mooney's defense was to deny each of the State's charges. He sought to cross-examine the victim concerning her prior statement, which arguably supported his trial testimony and called into question the victim's credibility on a material issue — whether she had or had not been subjected to sexual relations with Mooney as charged.

We recognize that the victim's prior statement seemingly falls within the language of the Rape Shield Statute, as the statement does relate to the victim's "past sexual behavior." However, the record shows that the defense did not seek to use the victim's prior statement to pursue the inadmissible topic of her sexual history with individuals other than Mooney. Rather, the defense sought to use the statement to show that the victim's "past sexual behavior" did not include him and that the victim's trial testimony concerning her sexual experiences with Mooney was a fabrication. As one of the purposes of the Rape Shield Statute is to assist the truth-seeking process, we believe that it should not provide "justification for letting the witness affirmatively resort to perjurious testimony in reliance on [Mooney's] disability to challenge her credibility."[30] Under the circumstances presented by this case, the trial court erred in restricting Mooney from cross-examining the victim concerning her prior statement.[31]

However, we conclude that the error was harmless. The record shows that, after the victim described at trial the acts that Mooney had committed against her, the prosecutor asked her whether she had been "completely honest" during initial interviews with investigators about her encounters with Mooney. She answered no, recalling that she had been interviewed in Forsyth County and at her school.

---

[29] Id. at 54-55 (1).

[30] (Citation and punctuation omitted.) *Villafranco v. State*, 252 Ga. 188, 195 (2) (313 SE2d 469) (1984).

[31] See *White*, supra; *Reece*, supra; compare *Richardson v. State*, 276 Ga. 639, 639-641 (1) (581 SE2d 528) (2003) (Rape Shield Statute barred evidence regarding sexual aspects of the victim's former relationship with person who was not the defendant, where consent was at issue and where impeachment was not the basis of admitting the evidence).

When asked further about the latter, she stated that she had told the interviewer that "[Mooney] was my mom's boyfriend, and I had only seen him twice." When asked why she had not been truthful during that interview, she explained, "Because I was scared." Thus, the jury was aware that the victim's trial testimony about her encounters with Mooney was inconsistent with her prior accounts during interviews. Furthermore, the evidence of Mooney's guilt was overwhelming. Under these circumstances, it is highly probable that the exclusion of the victim's prior statement did not contribute to the jury's verdict.[32]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 25, 2004 —

*Jeffrey R. Sliz*, for appellant.

*Jason J. Deal, District Attorney, Melissa J. Sanford, Assistant District Attorney*, for appellee.

---

[32] See *Coleman v. State*, 271 Ga. 800, 802 (3) (523 SE2d 852) (1999); *Laney v. State*, 271 Ga. 194, 197 (8) (515 SE2d 610) (1999).