## A96A2397. HAWKS v. THE STATE.
### (479 SE2d 186)

JOHNSON, Judge.

A jury found Adell Hawks guilty of aggravated assault after hearing evidence that he hit Debra Denise Lee with a stick. He appeals the judgment entered on that conviction.

1. Hawks asserts the state's notice of intent to present similar transaction evidence was legally insufficient because it did not specify the legitimate purpose for which the state sought to introduce the evidence. Hawks relies on *Rodriguez v. State*, 211 Ga. App. 256, 258-259 (4) (a) (439 SE2d 510) (1993), in which we said: "[W]e note for the benefit of the bench and bar that the notice of intent to introduce evidence of similar crimes should clearly specify the proper purpose for which introduction of such evidence is sought, 'as an exception to the general rule of inadmissibility. (Cit.)' *Hightower v. State*, 210 Ga. App. 386, 388 (3) (436 SE2d 28) (1993). The purpose of timely advance notice is to allow the defendant to investigate the validity, relevancy, and other aspects of admissibility of the prior offenses.

*Thompson v. State*, 186 Ga. App. 421, 422-423 (2) (367 SE2d 586) (1988). A rote recitation of any and all permissible purposes will not suffice. Moreover, where the State does 'not inform the trial court of the purpose for which the evidence (is) being offered(,) . . . it (is) impossible for the trial court to make the essential preliminary determination as to whether the (S)tate (is seeking to introduce) the evidence for an appropriate purpose.' *Williams v. State*, 261 Ga. 640, 643 (2d) (409 SE2d 649) (1991). Likewise, the trial court should specify on the record which proper purpose or purposes permit introduction of the proffered similar transaction. *Williams v. State*, supra at 642 (2) (b), fn. 3 and accompanying text. A vague 'finding' of an unspecified 'proper, specific purpose' is wholly inadequate to apprise the defendant of the limited grounds upon which such evidence is admissible." (Emphasis omitted.) The trial court conducted a hearing on the state's motion to introduce evidence of similar transactions immediately before the trial in this case. The state explained to the court that the similar transactions sought to be introduced in this case both involved the same victim as the present case and that the introduction of the earlier incidents was probative of Hawks' bent of mind and course of conduct. In the first transaction the state sought to introduce, Hawks was convicted of simple battery after an altercation with Lee about unpaid bills in 1993. Hawks also pled guilty to a battery involving Lee which occurred in 1996, an offense committed 13 months after the offenses for which Hawks was on trial in this case.

In *Rodriguez* we identified two reasons why the state should specify the proper purpose for which it intends to introduce similar transaction evidence in the notice: (1) to assist the trial court in making the essential preliminary determination as to whether the state is seeking to introduce the evidence for an appropriate purpose; and (2) to afford the defendant the opportunity to investigate the validity, relevancy, and other aspects of admissibility of the prior offenses. The trial court noted that the purposes for the introduction of the similar transactions in this case were "fairly obvious" from the nature of the evidence, and also that, even though not specifically stated in the notice itself, the state stated its proper purposes for seeking the introduction of the evidence with sufficient specificity prior to trial. Here it was possible for the trial court to make the essential preliminary determination regarding the admissibility of the similar transaction evidence even though the state failed to specifically enumerate those purposes in the notice. Likewise, Hawks does not assert that he was surprised upon learning the state's purpose in seeking to introduce the similar transactions at the hearing. He did not move for a continuance in order to investigate the validity, relevancy, or other aspects of admissibility of the prior offenses upon

learning the state's purposes in seeking the introduction of the evidence. Hawks has failed to show that his defense of the case was harmed as a result of the state's failure to state its purpose in its notice. See *James v. State*, 209 Ga. App. 182, 183 (1) (433 SE2d 132) (1993). Therefore, this enumeration presents no grounds for reversal.

2. Whether characterized as evidence of similar transactions or as evidence of prior difficulties between the parties, the trial court did not err in admitting evidence of Hawks' prior convictions involving violence perpetrated against Lee. See *Freeman v. State*, 214 Ga. App. 425, 427 (2) (448 SE2d 465) (1994). At the hearing held prior to trial, the state made a sufficient showing: (1) that it sought to introduce evidence of the independent crime, not to raise an improper inference as to Hawks' character, but for the purpose of showing course of conduct and bent of mind; (2) that Hawks committed the independent crimes; and (3) that a sufficient similarity existed between the independent crime and the crime charged so that the former tended to prove the latter. See *Williams v. State*, supra at 642 (2) (b).

3. Hawks argues that the trial court erred in admitting photographs depicting Lee's injuries sustained in one of the similar transactions. He contends that the photographs were offered for the sole purpose of inflaming the jury and arousing their anger against Hawks. We disagree. Physical evidence, like oral testimony, is probative in establishing the similarity between the prior offenses and the current offense to show course of conduct. See *Oliver v. State*, 168 Ga. App. 477 (3) (309 SE2d 627) (1983). Here, Hawks was charged with hitting Lee in the face with a stick which caused bruises to her forehead and eyes. Photographs identified by Lee of a previous incident show her face swollen and discolored after being kicked in the face by Hawks. Because the photographs depicted similar injuries inflicted by Hawks, they were probative to establish course of conduct, even if they also inflamed and prejudiced the jury. See *Jefferson v. State*, 206 Ga. App. 544, 548 (5) (425 SE2d 915) (1992); compare *Jefferson v. State*, 217 Ga. App. 747, 754 (2) (459 SE2d 173) (1995).

4. Hawks asserts the trial court erred in allowing Brenda Cook to testify as an expert regarding the "cycle of abuse" which characterizes certain relationships in which repeated domestic violence occurs. The officer who responded to the call testified that Lee's shirt was torn, there was a large swollen area above her left eye when he arrived at their residence, and she appeared to be angry. Lee testified at one point at trial that Hawks did not swing the stick hard and said that it was probably more like a "love tap." During his cross-examination of Lee, defense counsel elicited testimony that she and Hawks had "broken up" and reconciled five times in the six-year relationship, including one marriage and divorce. Lee also said that she

did not want to go forward with the prosecution of this case and that, but for the subpoena, she would not have been in court.

To suggest an explanation for Lee's contradictory testimony, the state proffered the testimony of Cook, who has four years of training and experience in working with domestic violence as director of a battered women's shelter. Cook testified that in the "honeymoon" or "remorse" stage of the cycle of domestic violence, a victim often will go into denial, minimize the violence which has occurred, and become reluctant to prosecute her partner. Unlike the expert in *Prickett v. State*, 220 Ga. App. 244, 246-247 (3) (469 SE2d 371) (1996), upon which Hawks relies, Cook was qualified to testify as an expert in the field of the cycle of domestic violence, an area which has been recognized by our Supreme Court as an area in which expert testimony is appropriate. See Chief Justice Benham's special concurrence in *Chester v. State*, 267 Ga. 9, 13-14 (471 SE2d 836) (1996), which addresses the use of expert testimony regarding the battered person syndrome to explain conduct of victims of domestic violence. Id. at 13. Further, in *Prickett*, supra, the expert witness did not limit his testimony to counseling, the area in which he had been qualified as an expert, but described the characteristics of post-traumatic stress disorder and concluded that the victim in the case suffered from it. Here, Cook testified that she did not know Lee or Hawks, and any conclusion about whether Lee's ambiguous behavior regarding the injuries she sustained in the incident could be attributed to the "cycle of violence" was properly left entirely to the jury. The trial court did not err in allowing this testimony.

5. Finally, Hawks claims the evidence was insufficient to support a conviction for aggravated assault. On appeal the presumption of innocence no longer prevails, we view the evidence in the light most favorable to the verdict and we do not speculate which evidence the jury chose to believe or disbelieve. *Gurlaskie v. State*, 196 Ga. App. 794 (1) (397 SE2d 66) (1990). Lee testified that she and Hawks were arguing about money. The two began struggling, and Lee picked up a stick to defend herself. Hawks wrested the stick from her and hit her in the head, injuring her. This evidence was sufficient to authorize the jury to find Hawks guilty beyond a reasonable doubt of aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Smith v. State*, 213 Ga. App. 207, 208 (2) (444 SE2d 146) (1994).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 9, 1996.

*Carey, Jarrard & Walker, Theodore W. Robinson*, for appellant.
*Lydia J. Sartain, District Attorney, Shampa Banerji, Assistant*

*District Attorney,* for appellee.