A02A1171. ALVARADO v. THE STATE.
(572 SE2d 18)

JOHNSON, Presiding Judge.

Edgar Alvarado was charged with one count of aggravated assault for placing a knife to the neck of Laurie Schmidt and threatening to kill her, one count of family violence battery for striking and kicking Schmidt, and another count of family violence battery for striking Schmidt. Alvarado pled not guilty to the charges. He was

---

[11] (Citations omitted.) *Ponder v. State*, 260 Ga. 840, 841-842 (400 SE2d 922) (1991).
[12] *Ball v. State*, 233 Ga. App. 859 (1) (506 SE2d 149) (1998).

tried before a jury, which found him guilty of all three offenses. The trial judge sentenced Alvarado to serve twelve years in custody, followed by eight years on probation, for the aggravated assault. The judge also sentenced Alvarado to serve, concurrent with the aggravated assault sentence, 12 months in custody for each of the family violence battery offenses. Alvarado appeals, challenging the sufficiency of the evidence supporting the convictions and evidentiary rulings by the trial judge. The challenges are without merit, and we therefore affirm Alvarado's convictions.

1. On appeal from a criminal conviction, the appellant is no longer presumed innocent, and this court does not weigh the evidence or determine witness credibility.[1] Rather, we review the evidence in the light most favorable to the verdict and determine if a rational trier of fact could have found guilt beyond a reasonable doubt.[2]

Viewed in favor of the verdict, the evidence in the instant case shows that Alvarado and Schmidt started dating in December 1998 and began living together in January 1999. Soon thereafter, Alvarado began verbally and physically abusing Schmidt. He yelled at Schmidt, cursed at her, and accused her of sleeping with other men. On several different occasions Alvarado hit, kicked, and strangled Schmidt. She urinated blood after one assault, and sustained many bruises.

In April 1999, the abuse culminated in three incidents upon which the criminal charges are based. The first incident took place on April 12 when Alvarado struck Schmidt on her hip and thigh with a golf club, dragged her across the floor of their apartment, put a necktie around her neck while threatening to strangle her, and punched her in the stomach. Four days later, Alvarado again beat Schmidt, slapping and kicking her. Later that same day, the final incident occurred in a car when Alvarado pulled a knife out of the car's center console, stuck it against Schmidt's neck, and told her that he should have killed her.

A former girlfriend of Alvarado testified that he had also abused her. She testified that they dated for several months, during which he verbally abused her and beat her. He accused her of sleeping with other people, threatened to kill her by slashing her throat, yanked her hair, punched her in the face and stomach, choked her, and once beat her with a cellular telephone until she lost consciousness.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a

---

[1] *Gafford v. State*, 240 Ga. App. 251, 252 (1) (523 SE2d 336) (1999).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Gafford*, supra.

rational trier of fact could have found Alvarado guilty beyond a reasonable doubt of aggravated assault[3] and two counts of family violence battery.[4]

2. Alvarado contends that the trial court erred in allowing a domestic violence expert to testify about battered person syndrome because it improperly placed his character in issue. The expert testified about the cycle of violence in an abusive relationship, and how a victim may not report the abuse because of fear or shame. The expert further explained that a victim may not leave her abuser because she blames herself for the problems, hopes the abuser will change, or is afraid of increased violence if the abuser catches her trying to leave.

We have held that such expert testimony is admissible to explain the behavior of a domestic violence victim who does not report abuse or leave the abuser.[5] Here, Schmidt testified that she was abused by Alvarado for three months before reporting the abuse. The defense attempted to undermine Schmidt's credibility by cross-examining her about her failure to report the same abuse to the police that she had testified about during the trial. Moreover, the defense introduced its own witnesses to show that Schmidt never seemed scared of Alvarado and did not report any abuse by him.

Under these circumstances, the expert testimony regarding battered person syndrome was admissible because the reasons why a battered woman would not leave the abuser or report his abuse are beyond the ken of the average layman.[6] Moreover, given the overwhelming evidence of Alvarado's guilt, even if the testimony somehow improperly placed his character in issue, it is highly probable that such impropriety did not contribute to the verdict.[7]

3. Alvarado complains that the trial court erred in allowing Schmidt's brother to give hearsay testimony that improperly bolstered Schmidt's testimony. The brother testified only after Schmidt had testified and been fully cross-examined by defense counsel about inconsistencies between her pre-trial statements and her trial testimony. The brother then testified that he saw Schmidt the morning after the aggravated assault, that she was badly bruised and shaken, and that she told him that Alvarado had beaten her.

A witness' prior consistent statement is admissible where the veracity of the witness' trial testimony has been placed in issue, the witness is present at trial, and the witness is available for cross-

---

[3] OCGA § 16-5-21 (a) (2) (person commits aggravated assault when he assaults with a deadly weapon).

[4] OCGA § 16-5-23.1 (f) (battery committed between persons living in the same household constitutes the offense of family violence battery).

[5] *Hawks v. State*, 223 Ga. App. 890, 892-893 (4) (479 SE2d 186) (1996).

[6] *Parrish v. State*, 237 Ga. App. 274, 276-277 (2) (i) (514 SE2d 458) (1999).

[7] Id. at 277 (2) (ii).

examination.[8] Because the veracity of Schmidt's trial testimony was placed in issue and she was available for cross-examination, her prior consistent statement to her brother identifying Alvarado as the person who assaulted her was admissible.[9]

4. Alvarado argues that the trial court erred in denying his motion for a mistrial after the state's similar transaction witness improperly commented on the ultimate issue in the case when she testified that there were similarities between what happened to both her and Schmidt, and that the verbal abuse in both of their experiences was the same. Contrary to Alvarado's claim, the witness' testimony did not comment on the ultimate issues in the case. Whether there were similarities between what happened to both women was not the ultimate issue in the case. Rather, the ultimate issues for the jury were whether Alvarado was guilty of aggravated assault for sticking a knife to Schmidt's neck, and guilty of family violence battery for hitting and kicking Schmidt. Because the witness did not comment on the ultimate issue of Alvarado's guilt or innocence as to the crimes charged, Alvarado's argument is without merit.[10]

Furthermore, the decision of whether to grant a mistrial lies in the sound discretion of the trial judge.[11] Here, the judge sustained Alvarado's objections to the testimony in question, but refused to grant a mistrial. We find no abuse of discretion in the court's decision.[12]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED SEPTEMBER 24, 2002 —
RECONSIDERATION DENIED OCTOBER 8, 2002 — 

*Bruce S. Harvey, David S. West,* for appellant.
*Daniel J. Porter, District Attorney, Traci R. Soderberg, Mary E. Leonard, Assistant District Attorneys,* for appellee.

---

[8] *Woodard v. State,* 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

[9] See *Donaldson v. State,* 244 Ga. App. 89, 90-91 (3) (534 SE2d 839) (2000); *Rattansay v. State,* 240 Ga. App. 165, 166 (1) (a) (523 SE2d 36) (1999).

[10] See *Willis v. State,* 274 Ga. 699, 701 (3) (558 SE2d 393) (2002); *Johnson v. State,* 266 Ga. 380, 383-384 (3) (467 SE2d 542) (1996).

[11] *Pittman v. State,* 274 Ga. 260, 262 (2) (553 SE2d 616) (2001).

[12] See *Schoolfield v. State,* 251 Ga. App. 52, 54-55 (1) (554 SE2d 181) (2001).