## A07A2229. MOORER v. THE STATE.
(659 SE2d 422)

JOHNSON, Presiding Judge.

A jury found Lawrence Moorer guilty of aggravated assault and false imprisonment for offenses committed against his girlfriend. Moorer was acquitted of rape and aggravated sodomy charges. He appeals, challenging the trial court's admission of expert testimony concerning the cycle of domestic violence, and the court's refusal to allow him to introduce testimony that the victim allegedly worked as a prostitute. His contentions are without merit, so we affirm the convictions.

Viewed in a light most favorable to the verdict,[1] the evidence shows that the victim was living with Moorer, her boyfriend, at the time the charged offenses occurred. The victim testified that over the course of their relationship, Moorer became more possessive, aggressive, and controlling. He would not allow her to work, shop on her own, or visit friends or relatives. He would become upset if she left their home without telling him. On one occasion about two weeks before the charged offenses occurred, Moorer hit the victim in the back of her head with a metal lamp. She could not recall what caused him to do it, but stated that it was "something that didn't make sense." The injury caused the victim's head to bleed, but she neither reported the assault nor sought medical attention.

On June 3, 2004, the victim went shopping without telling Moorer. When she returned, she and Moorer argued and went into their bedroom. Moorer closed the door, struck the victim with his fist and choked her. Moorer held the victim down and would not let her leave the room.[2] The assault began after midnight and lasted as long as an hour. That morning, while Moorer was asleep, the victim got dressed and ran to a friend's apartment. Her face was badly swollen. She told the friend what happened, lay down for a while and, around 1:00 p.m., called police to report the incident. The victim then went to the hospital emergency room.

A police detective testified that when he arrived at the DeKalb Medical Center emergency room, he saw that the victim had severe

---

[1] *Brinson v. State*, 243 Ga. App. 50 (530 SE2d 798) (2000).

[2] The victim also testified that Moorer raped and sodomized her during this incident, but the jury found him not guilty of those charges.

swelling to her face, cuts to her lips and right eye, and whelp marks on her neck. The victim told him that Moorer had physically and sexually assaulted her.

An emergency room nurse who examined the victim observed that the victim's eye was swollen, her neck and jaw were scratched, and her jaw was red. The victim told the nurse that Moorer held her down by her neck and said he was going to beat her to death. She noted that the victim came to the hospital at 3:00 in the afternoon, and a police officer arrived to meet with the victim at 3:30 p.m.

Lara Falberg, the victim-witness coordinator for the DeKalb County District Attorney's Crimes Against Children unit, testified as an expert on the cycle of domestic violence. She explained that domestic violence victims often feel trapped and helpless, and may not leave the abuser or seek help unless they fear for their lives.

1. Moorer contends the trial court abused its discretion in allowing expert testimony on the cyclical pattern of domestic abuse without proper foundation and when such testimony was improperly prejudicial.

Expert testimony is admissible to explain the behavior of a domestic violence victim who does not report abuse or leave the abuser.[3] Battered person syndrome is a complex area of human behavior and response.[4] The admission of testimony from an expert in the area of domestic violence and battered woman syndrome may be permissible because it is an area beyond the ken of the ordinary layperson.[5]

Moorer cross-examined the victim about her testimony that Moorer hit her with a lamp, and asked her whether she had told anybody about it or sought medical treatment for her injury. He also cross-examined the victim extensively about how much time passed between the alleged assault and her call to police. Under the circumstances, the expert testimony was admissible because the reasons that a victim would not immediately leave after a violent event or report the abuse are beyond the ken of the average layperson.[6]

2. Moorer contends the trial court erred in allowing expert testimony regarding the cyclical pattern of domestic violence when the testimony improperly placed his character in issue. As discussed above, the expert testimony was admissible because it explained why a battered woman would stay or not immediately report the abuse.[7] Moreover, given the overwhelming evidence of Moorer's guilt, even if

---

[3] *Alvarado v. State*, 257 Ga. App. 746, 748 (2) (572 SE2d 18) (2002).

[4] *Evans v. State*, 259 Ga. App. 9, 11-12 (3) (576 SE2d 27) (2002).

[5] *Parrish v. State*, 237 Ga. App. 274, 276-277 (2) (i) (514 SE2d 458) (1999).

[6] See *Alvarado*, supra.

[7] Id.

the testimony improperly placed his character in issue, it is highly probable that such impropriety did not contribute to the verdict.[8]

3. Moorer contends the trial court erred in qualifying Falberg as an expert when she was not shown to be an expert in domestic violence. There was no error.

A witness with such skill, knowledge, or experience in a field as to be able to draw an inference that could not be drawn by the average layperson may be qualified as an expert witness.[9]

Falberg testified that she has been a licensed clinical social worker for 12 years, has a master's degree in social work, and has had extensive training and experience in domestic violence cases. She stated that there is a lot of "crossover" between cases involving child victims and domestic violence cases, and that domestic violence is an issue that she has "always been involved with" in her work. She has been previously qualified as an expert on domestic violence and the behavior of domestic violence victims in superior court on four occasions.

A trial court has broad discretion in accepting or rejecting the qualifications of an expert, and its judgment will not be disturbed on appeal absent an abuse of discretion.[10] The trial court did not abuse its discretion by finding Falberg qualified to testify as an expert witness in this case.[11]

4. Moorer contends the trial court erred in barring his brother's testimony that he previously "observed" the victim working as a prostitute. The trial court did not abuse its discretion in disallowing the testimony.

OCGA § 24-2-3 provides that in any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible except in certain limited instances.[12] The rape shield statute seeks to protect the complaining witness by excluding evidence that might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused.[13] The statute assists the truth-seeking process by preventing the jury from becoming inflamed or impassioned and deciding the case on irrelevant and prejudicial evidence.[14]

In this case, Moorer sought to introduce his brother's testimony that he "observed [the victim] . . . to be a prostitute" before and during

[8] Id.
[9] *Evans*, supra at 11 (3).
[10] Id. at 11-12 (3).
[11] See *Hawks v. State*, 223 Ga. App. 890, 892-893 (4) (479 SE2d 186) (1993).
[12] OCGA § 24-2-3.
[13] See *Mooney v. State*, 266 Ga. App. 587, 592-593 (5) (b) (597 SE2d 589) (2004).
[14] Id. at 593.

the time she lived with Moorer. This evidence, Moorer urges, could have shown that another person inflicted the victim's injuries, and would have refuted the victim's testimony that Moorer did not allow her to work.

In order to have reversible error, there must be harm as well as error.[15] Assuming, arguendo, that the trial court's ruling in disallowing the testimony was erroneous, the verdict is nonetheless sustainable.[16] Moorer was not convicted of rape, but of aggravated assault and false imprisonment. The indictment charged Moorer with having committed aggravated assault by assaulting the victim "with his hands and fists[,] objects, which when used offensively against [her], were likely to result in serious bodily injury." Thus, evidence that Moorer beat the victim in the face, and choked or held her by the neck was sufficient to prove the crime of aggravated assault.[17] Likewise, the false imprisonment charge was proven with evidence that Moorer confined her without legal authority by holding her down and preventing her from leaving the bedroom.[18] Evidence that the victim allegedly had a history of prostitution[19] was not relevant to either the aggravated assault or false imprisonment charges. We point out that Moorer has not produced any evidence (or even claimed) that the victim was working as a prostitute on or about June 3, or that she was physically assaulted while working as a prostitute on that date or any other date. Therefore, Moorer has failed to show any nexus whatsoever between the alleged prostitution and the conclusion that someone else could have inflicted the victim's injuries.

The question of whether the victim told the truth when she testified that Moorer did not allow her to work was at most only minimally relevant. This is clearly a case in which the defendant's right to confront and cross-examine witnesses concerning the victim's alleged past sexual behavior with others must bow to accommodate the state's interest in the rape shield statute.[20] The trial court did not abuse its discretion in excluding the evidence.[21]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

---

[15] See *Grier v. State*, 276 Ga. App. 655, 658 (1) (624 SE2d 149) (2005).

[16] Id.

[17] See *In the Interest of T. W.*, 280 Ga. App. 693, 694 (634 SE2d 854) (2006).

[18] See *Mayorga v. State*, 225 Ga. App. 496, 497 (484 SE2d 292) (1997).

[19] Prostitution involves offering, consenting to, or performing sexual acts for money or other items of value. OCGA § 16-6-9.

[20] See generally *Harris v. State*, 257 Ga. 666, 668 (1) (c) (362 SE2d 211) (1987).

[21] See generally *Harris v. State*, 263 Ga. App. 329, 331 (587 SE2d 819) (2003).

DECIDED MARCH 10, 2008.

*Little & Crumly, Samuel F. Little, Jr.*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.