A09A2251. WORKS v. THE STATE.

(686 SE2d 863)

JOHNSON, Presiding Judge.

A jury found Robert Works guilty of aggravated assault, aggravated battery, and giving a false name to a law enforcement officer. Works appeals, contending (1) the evidence was insufficient to prove guilt beyond a reasonable doubt on the aggravated assault and aggravated battery charges, (2) the trial court erred in denying his speedy trial demand, (3) the trial court erroneously involved itself in plea negotiations and aided the state in presenting its case, (4) the trial court erred in allowing into evidence expert testimony regarding the cycle of domestic violence, (5) the trial court erred in not directing a verdict of acquittal for failure to prove venue, (6) the trial court erred in failing to merge the aggravated battery charge into the aggravated assault charge, and (7) trial counsel rendered ineffective assistance of counsel. For reasons that follow, we find no error and affirm.

1. Works contends the evidence was insufficient to support the jury's verdict as to the aggravated assault and aggravated battery charges. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary

---

[1] *Walls v. State*, 283 Ga. App. 560, 560-561 (1) (642 SE2d 195) (2007).

conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that Works, while in a blue Buick, started beating the victim and stabbing her with a screwdriver. The victim escaped the car and ran until she collapsed and lost consciousness. A witness to the incident ran to her aid and called 911. The witness described the assailant and said he left in a blue Buick.

At the same time the witness was talking to the 911 operator, an officer with the Pine Lake Police Department was driving his marked police car in the area. The witness flagged him down and told him there was "a woman's body" lying beside a nearby house. The officer ran to the side of the house and saw the victim. While the witness was still talking to the 911 operator, she saw the blue Buick again and screamed, "That's the car getting away."

The officer saw the blue Buick and, as he ran to his police car to give chase, he saw a DeKalb County police vehicle driving down the street. The officer flagged down the police car and told the officer that the suspect was in a blue Buick just ahead of them. The two officers pursued the blue Buick into a gas station two-tenths of a mile from the incident and stopped the car. Works was the only person in the car, and he was taken into custody. From the time the witness pointed out the blue Buick until the stop at the gas station, the officers maintained a continuous visual surveillance of the car.

After taking Works into custody, the DeKalb County officer noticed that Works' hand was injured and that there appeared to be blood on his hands and shirt. When the officer asked Works for his name and date of birth, Works gave the name Chondale Marques Rembert, but the officer later learned his name was Robert Works. After placing Works in the police car, the officer noticed a screwdriver and a single woman's shoe in the Buick. The shoe matched a shoe later found with the victim's clothing at the hospital. While en route to jail, Works told a detective that he and the victim were friends and that they had gotten into an argument.

The victim was taken to the hospital, where a detective interviewed her after she regained consciousness. The taped interview was played for the jury. In the interview, the victim responded that Works was her boyfriend and that he attacked her with a screwdriver because she told him she was leaving him. The victim also told the

---

[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

110

emergency room physician that her boyfriend had beaten her and stabbed her with a screwdriver.

After the victim had recovered from her injuries, she told the DeKalb County district attorney's office that she wanted to dismiss the charges because she wanted to resume her relationship with Works. She was mailed a request for dismissal, which she filled out and mailed back to the district attorney's office. In the form, the victim stated that she had been in a relationship with Works for five years and that she did not believe Works intended to "do what he did." She admitted that she said things that hurt Works' feelings and that she hit him first. She then apologized and asked that Works be released. At trial, the victim claimed that a man named Travis stabbed her.

Works contends the victim's statements while she was in the hospital were insufficient to prove guilt beyond a reasonable doubt because she was under the influence of alcohol and in severe pain when she made the statements. However, this argument goes to the credibility of the victim, an area within the exclusive province of the jury.[4] It was within the jury's province to find the victim's statements to the police and the emergency room physician to be more credible than her trial testimony. And, there is no dispute that the victim's statements in her request to dismiss the charges (acknowledging that Works was the individual who attacked her) did not occur while the victim was under any physical impairment. This evidence alone supported the jury's determination that Works was guilty beyond a reasonable doubt of aggravated assault and aggravated battery.[5]

2. Works contends the trial court erred in denying his January 22, 2007 demand for a speedy trial, which he claims was filed before he was represented by counsel. However, the record shows that Works was represented by a public defender when he filed the pro se demand. At the bond hearing held on January 24, 2007, Works' attorney specifically stated that she had represented Works for several weeks prior to the bond hearing and that she had spoken with Works' father and grandmother "about every other week" about Works' case. In addition, the record shows that Works copied the public defender's office with the demand for a speedy trial. Thus, the trial court did not err in denying Works' pro se motion on the ground that he was represented by counsel at the time he filed the motion.[6]

Moreover, at the bond hearing, Works' attorney stated that she

---

[4] See *Glover v. State*, 285 Ga. 461, 462 (1) (678 SE2d 476) (2009).

[5] See *Walls*, supra.

[6] See *Maddox v. State*, 218 Ga. App. 320, 321 (1) (461 SE2d 286) (1995) (a pro se demand for a speedy trial filed by a defendant while he is represented by counsel is a nullity).

spoke with Works and that they were not adopting the pro se speedy trial demand filed previously. This affirmative action by Works' attorney operated as a waiver of Works' right to an automatic discharge under OCGA § 17-7-170.[7]

Regardless of the actions prior to trial, it is well established that once the case was tried, Works' demand for a speedy trial expired.[8] This enumeration of error must fail as a matter of law.

3. Works asserts that the trial court improperly engaged in plea negotiations between him and the state. However, because the record shows that the trial court only advised the parties as to a plea she would find unacceptable and one she would accept, Works' contention lacks merit.

The state, after learning that the eyewitness did not appear for trial and knowing that the victim was reluctant to testify, presented a recommendation to the court that Works plead guilty and be sentenced to ten years and serve three years in custody. The trial judge stated that due to the severity of the charges, she would not accept the recommendation. The trial judge then stated that she would accept a plea recommendation of fifteen years to serve ten years, which Works had already declined. These actions do not amount to improperly engaging in plea negotiations.

"Judicial participation in the plea negotiation process is prohibited by court rule in this state. . . ."[9] However, if the parties negotiate a tentative plea agreement, a trial court may indicate whether it will concur with the agreement.[10] What is prohibited is when a trial court involves itself in plea negotiations so as to render a guilty plea involuntary.[11] Thus, while a trial court may communicate its willingness to accept a particular plea agreement independently negotiated by the parties, it is inappropriate for the trial court to tell a defendant that a rejection of a plea proposal will result in greater punishment in the event of a conviction by a jury.[12]

Here, the trial judge made no statement as to the sentence that would be imposed if Works did not accept a plea proposal. Nor did the trial court threaten Works with a stricter sentence if he decided to exercise his right to go to trial instead of pleading guilty. The trial court did not improperly interfere with plea negotiations, and this

---

[7] See *Cobb v. State*, 275 Ga. App. 554, 556-557 (2) (621 SE2d 548) (2005) (trial counsel's consent to continue the case outside the period of the speedy trial demand may waive the right to an automatic discharge).

[8] OCGA § 17-7-170 (c); *Williams v. State*, 296 Ga. App. 888, 889 (676 SE2d 303) (2009).

[9] *McDaniel v. State*, 271 Ga. 552, 553 (2) (522 SE2d 648) (1999).

[10] Id.

[11] Id. at 554 (2).

[12] See *Skomer v. State*, 183 Ga. App. 308, 310 (358 SE2d 886) (1987).

alleged enumeration of error lacks merit.

While Works spends more than three pages in this enumeration of error discussing how the trial court allegedly advised the state on how to try its case, showed personal bias, and abandoned its neutrality, these issues were not preserved for appellate review because the record does not show that a motion for recusal or a motion for mistrial was ever made.[13]

4. Works contends the trial court erred in allowing expert testimony regarding the cycle of domestic violence. However, trial counsel's failure to object to the testimony at trial waived any claim as to this issue.[14] Notwithstanding the waiver of this alleged enumeration of error, Works has raised this same argument in his claim for ineffective assistance of trial counsel. We therefore consider the alleged error asserted by Works, and we find no merit to it.

This Court has repeatedly held that expert testimony regarding the cycle of domestic violence may be permissible because it is an area beyond the knowledge of the ordinary layperson.[15] Such testimony is admissible to explain a victim's contradictory testimony.[16] Here, the expert's testimony was admissible to explain the victim's contradictory testimony and her recantation at trial.

The victim originally told the officer and the emergency room physician that Works, her boyfriend, had stabbed her with a screwdriver when she told him she was leaving him. After being released from the hospital, the victim told the state she wanted to dismiss the case so that she could continue her relationship with Works. In the request for dismissal, the victim stated she did not believe Works intended to do what he did. However, at trial she testified that "Travis" was the individual who beat and stabbed her. Given the circumstances in this case, the expert's testimony on the cycle of domestic violence was admissible to explain the victim's contradictory statements. The trial court did not err in permitting the expert's testimony.

Works' allegation that the state failed to provide a proper foundation for the admission of the expert testimony likewise lacks merit. The expert witness in this case had a master's degree in social work, was a licensed social worker, and specialized in domestic violence cases. In addition, she had previously been qualified in court as an expert on the cycle of domestic violence and the behavior of

---

[13] See *English v. State*, 290 Ga. App. 378, 381-382 (2) (659 SE2d 783) (2008) (if a defendant is aware of possible bias for recusal, he may not sit back, hope for a favorable ruling or sentencing, and then subsequently raise the bias issue).

[14] *Hargett v. State*, 285 Ga. 82, 83 (3) (674 SE2d 261) (2009).

[15] See *Moorer v. State*, 290 Ga. App. 216, 217 (1) (659 SE2d 422) (2008).

[16] See id.; *Hawks v. State*, 223 Ga. App. 890, 893 (4) (479 SE2d 186) (1996).

domestic violence victims. And she limited her testimony to those two matters in the present case. A trial court has broad discretion in accepting or rejecting the qualifications of an expert, and its judgment will not be disturbed absent an abuse of that discretion.[17] The trial court did not abuse its discretion in finding that the state laid a proper foundation for qualifying the witness to testify as an expert in this case.[18]

5. Works maintains the trial court erred in failing to direct a verdict of acquittal because the state failed to prove venue. The record, however, belies this assertion.

Since venue is a question for the jury, the jury's decision will not be set aside if there is any evidence to support it, and the credibility of a witness, even on the issue of venue, is for the jury.[19] Here, the Pine Lake police officer testified that the victim was lying on the ground beside a house located in DeKalb County, and that the streets surrounding the house are located in DeKalb County. In addition, the victim testified that at the time of her attack she was on the streets identified by the Pine Lake police officer as being in DeKalb County. This enumeration of error lacks merit.

6. Works asserts the trial court erred in failing to merge the aggravated assault and aggravated battery convictions. However, since the offenses were established by proving different facts, they do not merge.

Under OCGA § 16-1-7 (a) when the same conduct establishes the commission of more than one crime, a defendant may be prosecuted for both crimes, but cannot be convicted of more than one crime if one crime is included in the other. For merger purposes,

> one crime is included in another if either it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime charged or if the included crime differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person or a lesser kind of culpability suffices to establish its commission.[20]

The test to be applied is whether each offense requires proof of a fact which the other does not.[21] This is such a case.

---

[17] *Moorer*, supra at 218 (3).

[18] Id.

[19] See *Green v. State*, 254 Ga. App. 549, 550 (562 SE2d 835) (2002).

[20] (Citations and punctuation omitted.) *Robbins v. State*, 293 Ga. App. 584, 585 (667 SE2d 684) (2008).

[21] Id.

A person commits the offense of aggravated assault when he assaults with a deadly weapon or with any object, device, or instrument that, when used offensively against a person, is likely to or actually does result in serious bodily injury.[22] Works was found guilty of this offense because there was evidence that he assaulted the victim with a screwdriver. A person commits aggravated battery when he maliciously causes bodily harm to the victim by rendering a member of her body useless.[23] Works was found guilty of this offense because the victim's left lung was nonfunctional for a period of time due to the stab wound. Because aggravated assault and aggravated battery are two separate offenses with different elements of proof, the charges do not merge, and it is irrelevant that both crimes stemmed from a single act.[24] The trial court did not err in refusing to merge the two convictions.

7. In his final enumeration of error, Works contends he received ineffective assistance of trial counsel because his trial counsel (1) failed to object to the admission of the expert testimony on the cycle of domestic violence, and (2) failed to object to the trial court's failure to merge his aggravated assault and aggravated battery convictions. In order to succeed on a claim of ineffective assistance of trial counsel, Works must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[25] If an appellant fails to meet his burden of proving either prong, then we do not need to examine the other prong.[26]

Here, we found in Division 4 that the expert's testimony was admissible and in Division 6 that the convictions did not merge. Therefore, any objections from trial counsel would have been fruitless, and these "missed" objections provide no basis for a finding of ineffective assistance of trial counsel.[27]

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED NOVEMBER 17, 2009 — 

*Charles H. Frier*, for appellant.

---

[22] OCGA § 16-5-21 (a) (2).

[23] OCGA § 16-5-24 (a).

[24] *Robbins*, supra at 585-586.

[25] See *Judkins v. State*, 282 Ga. 580, 583 (5) (652 SE2d 537) (2007).

[26] Id.

[27] Id.; *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006) (attorney not ineffective for failing to argue that the offenses should be merged); *Massingill v. State*, 240 Ga. App. 690, 691 (2) (b) (524 SE2d 746) (1999) (attorney not ineffective for failing to object to expert qualifications and testimony).

*Gwendolyn Keyes Fleming, District Attorney*, for appellee.