A09A1853. MORGAN v. THE STATE.

(693 SE2d 504)

DOYLE, Judge.

Following a jury trial, John Russell Morgan was convicted of kidnapping with bodily injury,[1] family violence aggravated assault,[2] false imprisonment,[3] and burglary.[4] Morgan appeals, arguing that the trial court erred by (1) refusing to give his requested charge on justification; (2) denying his motions for mistrial after a State's

---

[17] 206 Ga. App. 437 (425 SE2d 424) (1992).

[18] Id. at 438.

[1] OCGA § 16-5-40 (d) (4).

[2] OCGA § 16-5-21 (j).

[3] OCGA § 16-5-41 (a).

[4] OCGA § 16-7-1 (a).

witness improperly placed Morgan's character into evidence; and (3) excluding letters from the victim to Morgan while he was in jail awaiting trial. We affirm, for reasons that follow.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court . . . does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[5]

So viewed, the record shows that Morgan began dating M. S. in January 2007, and the two began living together shortly thereafter. Morgan physically abused M. S. on multiple occasions while they lived together, choking, hitting, burning, and biting her. Morgan continued to beat M. S. after she became pregnant with his child, and he hit her in the stomach with his fist when she was approximately five months pregnant. When Morgan discovered that M. S. was bleeding from her vagina, he told her "to bleed to death." M. S.'s doctor diagnosed her with a placental abruption and advised her to refrain from inserting anything in her vagina, warning her that any additional tearing to her placenta could cause fetal death.

After the diagnosis, M. S. did not return home to Morgan. Instead, she left town to stay with her aunt for a few days and then went to stay with her twin sister. On August 28, 2007, Morgan called M. S.'s sister's house and advised (in a voice that the sister described as "mad") that he was "on his way over." He also spoke to M. S. and told her that he was "worried about the baby." Immediately thereafter, Morgan drove into the driveway, exited the car with what appeared to be a rake or a long stick in his hand, and approached the house. Morgan "bang[ed]" on the door, immediately kicked it open, and raised the stick at M. S. He then grabbed M. S. by her hair, dragged her outside, and pushed her into the car, where two other people were waiting.

Morgan drove away and, as he was driving, he repeatedly punched M. S. in her face. When one of the other passengers — Morgan's former girlfriend — told him to "stop hitting her, she's pregnant," Morgan replied, "It's just her face, I'm not hitting her stomach." He then called M. S.'s sister and forced M. S. to tell her that she was "okay." When he heard the voice of a male police officer

---

[5] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

who had responded to the sister's house, Morgan grabbed the cell phone from M. S., terminated the call, and disabled the phone so that the police could not use it to track their location.

After the two passengers dropped Morgan and the victim off at Morgan's uncle's house, Morgan forced M. S. to walk into the woods to an isolated camping area on the property. According to M. S., Morgan had sexual intercourse with her twice, both times over her repeated objections and protests that doing so could harm the baby. Morgan also asked her to perform oral sex, and she complied because she was too frightened to refuse. Morgan then forced M. S. to climb into a closed loft area of the camping shelter, where the police eventually found them.

Morgan was indicted for kidnapping with bodily injury, rape,[6] family violence aggravated assault, false imprisonment, and burglary. Following the trial, the jury found him not guilty of rape and guilty of the other four charges, and this appeal followed.

1. Morgan argues that the trial court erred by refusing to charge the jury on justification, claiming that was his sole defense. We find no error.

"A charge on the defendant's sole defense is mandatory only if there is some evidence to support the charge."[7] "A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force."[8] Here, contrary to Morgan's assertion, the evidence did not support a charge on justification.

Morgan argues that his actions were justified because he was trying to prevent M. S. from using methamphetamine, which could cause harm to herself and their unborn baby. At trial, evidence was submitted that M. S. had used methamphetamine during a prior pregnancy (including seven days before the baby's due date), that both she and her daughter tested positive for methamphetamine after the baby was born in March 2006, and that her first child was removed from M. S.'s custody by the Department of Family and Children Services ("DFCS") as a result and ultimately adopted after M. S. failed to comply with her case plan. Pretermitting whether M. S.'s methamphetamine use was relevant, Morgan points to no evidence that she used or threatened to use methamphetamine while she was pregnant with his child or to otherwise harm herself or the

---

[6] OCGA § 16-6-1 (a) (1).

[7] *Porter v. State*, 272 Ga. 533, 534 (3) (531 SE2d 97) (2000).

[8] OCGA § 16-3-21 (a).

baby. Because there was no evidence of any imminent threat of harm, the trial court did not err in refusing to give a jury charge on justification.[9]

2. Morgan contends that the trial court erred by denying his motions for mistrial made after his former girlfriend, Shannon Branson, testified that he had previously served time in prison. We find no basis for reversal.

During direct examination, the State asked Branson how long she had dated Morgan, and Branson replied, "Two or three years. I mean, he went to prison like a couple months after. . . ." Morgan's attorney immediately made a motion for mistrial outside the presence of the jury, which the trial court denied. The trial court offered to give a curative instruction to the jury, but Morgan declined the offer.

Then, during Morgan's cross-examination of Branson, the following exchange occurred:

> Q: Ms. Branson, you said that [Morgan] was just a friend of yours and you all used to date?
> A: He's just a friend of mine now. We used to date a few years ago.
> Q: And is that how you still feel about him?
> A: As a friend, yeah, that's it.
> Q: Since he's been in jail, have you written him letters?
> A: Since he's been in jail this time? Yeah, I've written him a couple [of] letters.

Defense counsel made a second motion for mistrial, arguing that Branson's testimony constituted improper character evidence. After questioning Branson, the trial court denied the motion, stating that

> I think we're dealing with a witness who's at best unsophisticated[,] and on reflection, I don't think she's doing this on purpose. I just don't think she knows better[,] and also, I think that [defense counsel's] question was not as precise as it could have been[,] and [the] question mentioned jail itself[,] and that may have contributed to the problem. . . .

The court also offered to give curative instructions to the jury, but

---

[9] See *Boyd v. State*, 284 Ga. 46, 48-49 (4) (663 SE2d 218) (2008) (trial court had no obligation to instruct the jury on justification because there was no evidence of any imminent threat of harm); *Gravitt v. State*, 279 Ga. 33, 34-35 (2) (608 SE2d 202) (2005) (no error in refusing to give justification charge because there was no evidence of present and immediate violence at the time of the charged crime); *Porter*, 272 Ga. at 535 (3).

Morgan again declined.

"Whether to grant a mistrial is within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion."[10] We find no abuse of discretion in this case. Branson's initial comment that Morgan went to prison after their relationship was not responsive to the State's question regarding how long the witness dated Morgan. "An unresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue."[11] Furthermore, because Morgan failed to renew his motion for mistrial after he declined the trial court's initial offer to give a curative instruction, he has waived his argument regarding Branson's initial comment.[12]

Pretermitting whether Morgan similarly waived his right to challenge the denial of his second motion for mistrial, Branson's second comment regarding Morgan's prior time in prison was made during cross-examination by counsel for Morgan. Because "defense counsel may not take chances propounding questions which may elicit damaging answers and then demand reversal on appeal, we find no reversible error."[13]

Finally, with regard to both comments by Branson, even if we did find error, "such error was harmless, as the evidence of [Morgan's] guilt was overwhelming[,] and thus it is highly probable that the admission of the challenged testimony did not contribute to the verdict."[14]

3. Morgan further argues that the trial court erred by excluding letters written by M. S. to Morgan during the time period between his arrest and the trial. Specifically, Morgan contends that the letters "were admissible to prove consent, to impeach [M. S.], and to prove the state of her feelings towards . . . Morgan."

During the trial, before defense counsel began cross-examining M. S., the State moved in limine to prevent Morgan from introducing letters written by M. S. to Morgan subsequent to his arrest. The State argued that the letters, which contained comments about specific sexual activities between the parties before the charged crimes and sexual acts that M. S. wanted to perform on Morgan when he was released from jail, were irrelevant and barred by the Rape Shield Statute.[15] Morgan objected, arguing that the letters were

---

[10] *Brinson v. State*, 243 Ga. App. 50, 50-51 (1) (530 SE2d 798) (2000).

[11] *Falak v. State*, 261 Ga. App. 404, 406 (2) (583 SE2d 146) (2003). See *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007).

[12] See *Clark v. State*, 289 Ga. App. 612, 617 (3) (658 SE2d 190) (2008).

[13] *Hutson v. State*, 216 Ga. App. 100, 102 (5) (453 SE2d 130) (1995).

[14] *Walker*, 282 Ga. at 705 (2).

[15] See OCGA § 24-2-3 (a).

relevant to show that M. S. consented to the sexual activity on August 28, 2007 and admissible for impeachment purposes (specifically, to show that M. S. still loved Morgan, which conflicted with her testimony that she was still scared of him). After reviewing the letters and hearing argument from counsel, the trial court stated:

> I think that the Rape Shield Statute would cover sexual activity before or after the event, prior to trial[,] and so I don't think . . . I don't think that would be included. There's a procedure for introducing Rape Shield type evidence in the statute[,] and we'll follow that procedure[,] but from what I've heard so far, I don't think it's relevant and it is covered by [the] Rape Shield Statute. So I don't see that the letters come in, unless there's some kind of impeachment.

Counsel and the trial court continued to discuss the issue, during which the following exchange occurred:

> THE COURT: There's a procedure to get [the statements contained in the letters] in, but we're not there yet.
>
> DEFENSE COUNSEL: So your Honor's ruling, I guess on [the State's] motion is not necessarily that they automatically don't come in but that we can reserve it as we see how the trial progresses?
>
> THE COURT: Well, if you follow the procedure.
>
> DEFENSE COUNSEL: Yes.
>
> THE COURT: But that doesn't mean — I'm not saying — what I'm saying is from what I've heard so far, the statute applies[,] and, you know, there's a procedure that you must follow before [it is] admitted[,] and we haven't done that yet. The procedure has not been followed yet. That's all I'm saying.

Counsel for Morgan then engaged in extensive cross-examination of M. S., but never tendered the letters at issue or otherwise attempted to admit them into evidence. Morgan's counsel did elicit testimony from M. S. that she: still cared about and loved Morgan; spoke with him on the phone on numerous occasions and brought their infant son to visit him at jail several times, in violation of a DFCS order which prohibited her from having any contact with Morgan; sent him pictures of herself and their son; and sent Morgan letters containing various song lyrics and poems and telling him that she

would be glad when the trial was over and they could be together as a family. M. S. also testified that she wished she "could go back in time and take it all away."

> OCGA § 24-2-3 provides that in any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible except in certain limited instances. The rape shield statute seeks to protect the complaining witness by excluding evidence that might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused. The statute assists the truth-seeking process by preventing the jury from becoming inflamed or impassioned and deciding the case on irrelevant and prejudicial evidence.[16]

"We review the trial court's exclusion of evidence under the Rape Shield Statute for abuse of discretion."[17] We find no abuse of discretion here.

Here, although the trial court initially indicated that the Rape Shield Statute prohibited admission of the letters, the court clearly indicated that it would consider any future proper attempt to admit the evidence; Morgan declined to do so. Thus, we find Morgan's argument that the trial court improperly excluded the evidence unpersuasive.[18]

Furthermore, "the Rape Shield Statute bars the admission of evidence relating to the victim's past sexual behavior unless it directly involves the accused's participation and supports an inference that the accused could have reasonably believed that the victim consented to the conduct at issue."[19]

Here, the jury was aware that M. S. was pregnant with Morgan's child, and, in addition, Morgan elicited testimony from M. S. that she had engaged in oral sex with Morgan in the past. Thus, to the extent that a portion of a letter from M. S. to Morgan recounting their prior sexual activity supports an inference that M. S. consented to Morgan's sexual contact in the woods, such evidence was cumulative. Similarly, to the extent that the portion of a letter from M. S. in which she describes future sexual activities that she would like to engage in with Morgan is relevant and admissible to show that she

---

[16] (Footnotes omitted.) *Moorer v. State*, 290 Ga. App. 216, 218 (4) (659 SE2d 422) (2008).

[17] *Jackson v. State*, 254 Ga. App. 562, 565 (2) (562 SE2d 847) (2002).

[18] See id. at 564-565 (2).

[19] (Punctuation omitted.) *Bing v. State*, 256 Ga. App. 88, 90 (2) (567 SE2d 731) (2002), citing OCGA § 24-2-3 (b) & (c) (2).

still has feelings for Morgan, that evidence is cumulative to her testimony that she still loves Morgan and remains in contact with him.[20]

> It is not error to exclude otherwise relevant evidence if its probative value is substantially outweighed by considerations of avoiding the needless presentation of cumulative evidence from which the jury might or might not draw a certain inference. Because the document[s] in question would have given the jury no information not already provided by other evidence . . . , we find no error in the trial court's exclusion of it from evidence.[21]

Finally, "[i]n order to have reversible error, there must be harm as well as error. Assuming, arguendo, that the trial court's ruling in disallowing the [letters] was erroneous, the verdict is nonetheless sustainable."[22] Morgan was not convicted of rape, but of kidnapping with bodily injury, family violence aggravated assault, false imprisonment, and burglary. These charges were proven with testimony from M. S., the victim's sister, and Branson that Morgan kicked in the door to the sister's home, threatened M. S. with a stick, dragged her to the car by her hair, hit her in the face multiple times, drove her away from the house, and forced her to walk into the woods with him, where he made her remain until the police finally arrived. The evidence in the letters that M. S. had a previous sexual relationship with Morgan before the incident and wanted to have one with him in the future was not relevant to the charges for which Morgan was convicted.[23] Thus, this enumeration presents no basis for reversal.[24]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JANUARY 25, 2010 —
RECONSIDERATION DENIED APRIL 2, 2010 — ▮▮▮▮▮▮▮

*Benjamin D. Goldberg, Michael R. McCarthy, Jimmonique R. S. Rodgers*, for appellant.

---

[20] We recognize that the Rape Shield Statute bars the admission of the victim's *past* sexual behavior. See OCGA § 24-2-3 (a).

[21] (Citation and punctuation omitted.) *James v. State*, 270 Ga. 675, 678 (6) (513 SE2d 207) (1999).

[22] (Footnote omitted.) *Moorer*, 290 Ga. App. at 219 (4).

[23] See id.

[24] See id.

*Kermit N. McManus, District Attorney, Susan A. Beck, Assistant District Attorney*, for appellee.